**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 7, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 7, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) ) | No. 101300-1 |
| BETTE BENNETT, | ) ) | EN BANC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | Filed: December 7, 2023 |
| Defendant. | ) ) ) | |

YU, J.— This case concerns the constitutionality of Washington's eight-year statute of repose for medical malpractice actions. The statute of repose provides "that in no event shall an action be commenced more than eight years after" the "alleged professional negligence," subject to certain exceptions not applicable here. RCW 4.16.350(3). If a medical malpractice action is "not commenced"

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

within eight years, then the action "shall be barred"—even if the patient is unable to determine the cause of their injury within that time frame. *Id.*

In this case, plaintiff Bette Bennett alleges that she incurred a traumatic brain injury caused by defendant United States' medical negligence. However, the cause of Bennett's injury was not diagnosed until the eight-year repose period had already expired. As a result, it was impossible for Bennett to timely commence her medical malpractice action. The United States accordingly moved to dismiss her complaint as time barred. Before ruling on the motion to dismiss, the federal district court certified two questions to this court, asking whether the statute of repose violates (1) the privileges and immunities clause of article I, section 12 of the Washington Constitution or (2) the right to access the courts pursuant to article I, section 10 of the Washington Constitution.

In answering these questions, we reaffirm the legislature's broad authority to set time limits for commencing an action. We also recognize that when exercising this authority, the legislature must weigh competing interests and make difficult choices as a matter of policy. We do not seek to constrain the legislature's authority or to second-guess its policy decisions. However, it is our duty to faithfully apply the Washington Constitution as interpreted in this court's precedent. In accordance with our precedent, we must conclude that the medical malpractice statute of repose in RCW 4.16.350(3) implicates the heightened

2

*Bennett v. United States,* No. 101300-1

protections of our state privileges and immunities clause. We must also conclude that as enacted in 2006, the statute of repose does not satisfy article I, section 12's "reasonable ground" test. Therefore, the answer to the first certified question is yes: RCW 4.16.350(3)'s eight-year statute of repose for medical malpractice actions violates the privileges and immunities clause of article I, section 12 as a matter of independent state law. We decline to reach the second certified question.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bennett is married to a service member in the United States Navy.[1] On May 18, 2009, Bennett underwent sinus surgery at Bremerton Naval Hospital, after which "splints were placed [in Bennett's nose] to keep her nasal airway open." Clerk's Papers (CP) at 11.

One week later, Bennett "experienced significant bleeding from her nose" and was taken by ambulance to the Bremerton Naval Hospital emergency room. *Id.* The on-call physician examined Bennett, removed the splints from her nose, and inserted nasal packing. When the physician "pushed the packing up her nose, [Bennett] heard a noise that sounded like cracking, felt acute pain, and passed out." *Id.* Bennett was rushed to the operating room to control her nosebleed. She was

---

[1] At this procedural stage, the allegations in Bennett's complaint "are assumed as true and the complaint is construed in her favor." Clerk's Papers at 92 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

later discharged, but she "returned on May 29, 2009 to have the packing removed from her nasal cavity." *Id.* at 12.

Bennett "subsequently developed a complex constellation of symptoms including migraines, malaise, light sensitivity, memory loss, and other neurocognitive impairment." *Id.* Bennett sought treatment from "a series of neurologists and other specialists," but they "were unable to diagnose the cause of her symptoms." *Id.* Finally, in August 2017, a neuropsychologist determined that Bennett's symptoms were "consistent with a traumatic brain injury" and referred her to another specialist. *Id.* In December 2017, the specialist diagnosed Bennett "with traumatic brain injury to her prefrontal cortex caused by the nasal pack insertion in [May] 2009." *Id.*

In August 2018, Bennett filed an administrative tort claim with the Department of the Navy in accordance with federal law. *See* 28 U.S.C. § 2675. The Department of the Navy denied her claim and informed Bennett that she had six months to commence an action in federal district court. Within six months, Bennett filed a complaint for medical malpractice in the United States District Court for the Western District of Washington pursuant to the Federal Tort Claims Act (FTCA), Pub. L. No. 79-601, 60 Stat. 812-852.

The United States moved to dismiss Bennett's complaint as time barred based on the eight-year statute of repose in RCW 4.16.350(3). The United States

4

argued that "[a]t the latest, the alleged negligent acts or omissions . . . occurred on or prior to May 29, 2009." CP at 28. Therefore, pursuant to the statute of repose, Bennett's "cause of action was extinguished eight years later on May 29, 2017"— several months before her traumatic brain injury was diagnosed, and over a year before she filed her administrative tort claim. *Id.* In response, Bennett did not challenge the United States' timeline or assert that there were any relevant factual disputes. Instead, Bennett argued that the statute of repose could not apply as a matter of law, both because it is preempted by the FTCA and because it violates the Washington Constitution.

Before ruling on the motion to dismiss, the federal district court certified two questions to this court, asking whether the statute of repose violates article I, sections 10 and 12 of the Washington Constitution. We declined to answer the certified questions at that time because the federal district court had not yet ruled on Bennett's FTCA preemption argument, which "could make it unnecessary to reach the state law issues." Ord., *Bennett v. United States*, No. 99220-7, at 2 (Wash. Dec. 4, 2020).

The federal district court subsequently denied the United States' motion to dismiss, ruling that the statute of repose was preempted by the FTCA. However, the Ninth Circuit Court of Appeals reversed on interlocutory appeal, holding that the FTCA "incorporates and applies state laws that serve as statutes of repose

5

*Bennett v. United States,* No. 101300-1

rather than overriding them." *Bennett v. United States*, 44 F.4th 929, 931 (9th Cir. 2022). Therefore, the Ninth Circuit Court of Appeals remanded to the federal district court to decide "the threshold question of the constitutionality of Section 4.16.350 under the Washington state constitution. Depending on the outcome of that issue, this action may either be dismissed for lack of jurisdiction or proceed to the merits of Bennett's claims." *Id.* at 938.

On remand, the federal district court certified the same two questions to this court regarding the constitutionality of the statute of repose. We retained the certified questions for decision and accepted six amici briefs on the merits.[2]

## ISSUES

A.  Does the statute of repose in RCW 4.16.350(3)[3] violate the privileges and immunities clause of the Washington State Constitution, article I, section 12?

B.  Does the statute of repose in RCW 4.16.350(3) unconstitutionally restrict a plaintiff's right to access the court in violation of the Washington State Constitution, article I, section 10?

---

[2] Bennett is supported by amicus Washington State Association for Justice Foundation. Amici supporting the United States are (1) the State of Washington, (2) Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, (3) Cedar River Clinics, (4) the Washington State Medical Association and Washington State Hospital Association, and (5) the American Medical Association.

[3] As phrased by the federal district court, the certified questions refer to RCW 4.16.350 as a whole. We rephrase the certified questions slightly to refer specifically to the statute of repose.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

A.      Background law on commencement of civil actions

To provide context for the questions presented, it is first necessary to review Washington law regarding timely commencement of civil actions generally and medical malpractice actions specifically.

Before the 1970s, medical malpractice actions "were governed by the limitations period in the general tort statute of limitations." *Gunnier v. Yakima Heart Ctr., Inc., P.S.*, 134 Wn.2d 854, 860, 953 P.2d 1162 (1998). The general tort statute of limitations "describes the actionable event as the *accrual* of a cause of action." *Ruth v. Dight*, 75 Wn.2d 660, 666, 453 P.2d 631 (1969) (emphasis added) (citing former RCW 4.16.010 (1891); former RCW 4.16.080(2) (1937)); *see also* RCW 4.16.005. Thus, cases addressing timely commencement of civil actions often focused on when the action "accrued." *E.g.*, *Ruth*, 75 Wn.2d 660; *Lindquist v. Mullen*, 45 Wn.2d 675, 277 P.2d 724 (1954), *overruled in part on other grounds by Ruth*, 75 Wn.2d at 667.

"In many instances an action accrues immediately when the wrongful act occurs." *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006). However, "where the plaintiff is unaware of harm sustained," the action may not accrue until "the plaintiff discovers, or in the reasonable exercise of

diligence should discover, the elements of the cause of action." *Id.* at 575-76. This

is known as "the discovery rule of accrual." *Id.* at 575.

This court first adopted the discovery rule of accrual in 1969 as a matter of

statutory interpretation. *Ruth*, 75 Wn.2d 660. In *Ruth*, we held that the word

"accrual" is "a term susceptible of interpretation from its very nature," and we

adopted the discovery rule of accrual as "both a preservation of limitations on the

time in which the action may be brought and a preservation of the remedy, too,

where both parties are blameless as to delay in discovery of the asserted wrong."

*Id.* at 666-67.

*Ruth* was a medical malpractice action, but in subsequent cases, we have

extended the discovery rule of accrual to various types of civil actions. *E.g., 1000*

*Va. Ltd. P'ship*, 158 Wn.2d at 579 ("contract claims involving latent construction

defects"). However, medical malpractice actions are "no longer subject to the

accrual rule" because "[t]he Legislature responded to *Ruth* in 1971 by enacting

RCW 4.16.350." *Gunnier*, 134 Wn.2d at 861.

RCW 4.16.350(3) contains three provisions for timely commencement of

medical malpractice actions—a three-year statute of limitations, a one-year

discovery rule, and an eight-year statute of repose:

> Any civil action for damages for injury occurring as a result of health
> care which is provided after June 25, 1976 . . . based upon alleged
> professional negligence shall be commenced within three years of the
> act or omission alleged to have caused the injury or condition, or one

> year of the time the patient or [their] representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission.

In Bennett's case, the three-year statute of limitations and one-year discovery rule are inapplicable because "the FTCA's timing provisions act as a statute of limitations that supersedes any state statute of limitations." *Bennett*, 44 F.4th at 931. Nevertheless, her action remains subject to the eight-year statute of repose. *Id.*

Statutes of repose provide time limits for bringing an action, but they "are 'of a different nature than statutes of limitation.'" *1000 Va. Ltd. P'ship*, 158 Wn.2d at 574 (quoting *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 211, 875 P.2d 1213 (1994)). Broadly speaking, "'[a] statute of limitation bars [a] plaintiff from bringing an already accrued claim after a specific period of time. A statute of repose terminates a right of action after a specified time, even if the injury has not yet occurred.'" *Id.* at 574-75 (quoting *Rice*, 124 Wn.2d at 211-12).

Statutory repose periods are typically "'measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.'" *Bennett*, 44 F.4th at 935 (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8, 134 S. Ct. 2175, 189 L. Ed. 2d 62 (2014)). If the repose period expires before the injured person discovers the cause of their injury, then the statute of

9

*Bennett v. United States,* No. 101300-1

repose simply "'prohibit[s] a cause of action from coming into existence.'" *Id.* (quoting *CTS Corp.*, 573 U.S. at 16).

That is what happened in Bennett's case. For purposes of its motion to dismiss, the United States has "accepted as true" that Bennett could not have reasonably discovered the cause of her injury until *after* the eight-year repose period had already expired. Def.-Appellee's Answering Br. at 12 n.1. Thus, the statute of repose makes it impossible for Bennett to obtain a remedy in tort; her cause of action was time barred before it even existed.

We are asked whether the statute of repose violates the privileges and immunities clause of article I, section 12 or the right to access the courts pursuant to article I, section 10. "We review the constitutionality of a statute de novo." *Schroeder v. Weighall*, 179 Wn.2d 566, 571, 316 P.3d 482 (2014). Likewise, "[c]ertified questions from federal court are questions of law that we review de novo." *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011). "We presume statutes are constitutional, and the party challenging constitutionality bears the burden of proving otherwise." *Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 239, 481 P.3d 1060 (2021), *cert. denied*, 142 S. Ct. 1094 (2022).

10

*Bennett v. United States,* No. 101300-1

B.    The eight-year statute of repose for medical malpractice claims violates the privileges and immunities clause of article I, section 12

In response to the first certified question, we hold that RCW 4.16.350(3)'s statute of repose violates the independent state law protections of article I, section 12. The statute of repose implicates a fundamental right of state citizenship by "limiting the pursuit of common law claims against certain defendants." *Schroeder*, 179 Wn.2d at 573. However, the statute of repose does not "*in fact* serve[ ] the legislature's stated goal[s]." *Id.* at 574. Therefore, we must conclude that the statute of repose violates article I, section 12's privileges and immunities clause.

1.    Overview of state law protections pursuant to article I, section 12

Article I, section 12 of the Washington Constitution provides, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." In many cases, "this court has construed article I, section 12 as 'substantially similar' to the federal equal protection clause" of the Fourteenth Amendment to the United States Constitution. *Schroeder*, 179 Wn.2d at 571 (quoting *Seeley v. State*, 132 Wn.2d 776, 788, 940 P.2d 604 (1997)). However, we have "also recognized that article I, section 12 differ[s] from and [is] more protective than the federal equal protection clause and require[s] a very different analysis in certain situations." *Id.* at 572. The requirement for an

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

independent state law analysis arises from the different purposes underlying article I, section 12's privileges and immunities clause and the federal equal protection clause.

While "the Fourteenth Amendment was intended to prevent discrimination against disfavored individuals or groups," article I, section 12 "was intended to prevent favoritism and special treatment to the few while disadvantaging others." *Woods*, 197 Wn.2d at 242. As a result, article I, section 12 provides heightened state law protections "when the threat is not of majoritarian tyranny but of a special benefit to a minority and when the issue concerns favoritism rather than discrimination." *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 731, 42 P.3d 394 (2002) (*Grant County* I). Nevertheless, "not every statute authorizing a particular class to do or obtain something involves a 'privilege' subject to article I, section 12." *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 812, 83 P.3d 419 (2004) (*Grant County* II). Instead, "the terms 'privileges and immunities' 'pertain alone to those fundamental rights which belong to the citizens of the state by reason of such citizenship.'" *Id.* at 812-13 (quoting *State v. Vance*, 29 Wash. 435, 458, 70 P. 34 (1902)).

Thus, an independent state law analysis of article I, section 12 requires courts to engage in "a two-part test." *Schroeder*, 179 Wn.2d at 572. "First, we ask whether a challenged law grants a 'privilege' or 'immunity' for purposes of our

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

state constitution.  If the answer is yes, then we ask whether there is a 'reasonable ground' for granting that privilege or immunity."  *Id.* at 573 (citation omitted) (quoting *Grant County* II, 150 Wn.2d at 812; *Grant County* I, 145 Wn.2d at 731).  If the privilege or immunity is not supported by reasonable grounds, then the challenged law violates article I, section 12.

    2.    The statute of repose implicates a "privilege" or "immunity" for purposes of article I, section 12

To determine whether the statute of repose "implicates a 'privilege' or 'immunity,'" we must decide whether the statute implicates any of "the 'fundamental rights' of state citizenship."  *Id.* at 572 (internal quotation marks omitted) (quoting *Grant County* II, 150 Wn.2d at 812-13).  In accordance with our precedent, we hold that the statute of repose implicates the fundamental right to pursue a common law cause of action.

Fundamental rights of state citizenship for purposes of article I, section 12 are not necessarily the same as fundamental rights for purposes of the federal equal protection clause.  Instead, to locate fundamental rights of state citizenship for purposes of article I, section 12, we typically look to "our early cases distinguishing the fundamental rights of state citizenship."  *Martinez-Cuevas v. DeRuyter Bros. Dairy*, 196 Wn.2d 506, 518-19, 475 P.3d 164 (2020).  These rights include

*Bennett v. United States,* No. 101300-1

> "the right to remove to and carry on business [in the state]; the right, by usual modes, to acquire and hold property, and to protect and defend the same in the law; the rights to the usual remedies to collect debts, and to enforce other personal rights; and the right to be exempt, in property or persons, from taxes or burdens which the property or persons of citizens of some other state are exempt from."

*Grant County* II, 150 Wn.2d at 813 (quoting *Vance*, 29 Wash. at 458). In addition, we have recognized the fundamental "right to an individual's sexual orientation and the right to marry," as well as "the fundamental right to statutory protection for citizens working in extremely dangerous conditions." *Woods*, 197 Wn.2d at 242; *Martinez-Cuevas*, 196 Wn.2d at 519 (citing CONST. art. II, § 35).

This court has already held that "'the rights to the usual remedies . . . to enforce other personal rights'" include "the right to pursue common law causes of action in court." *Schroeder*, 179 Wn.2d at 573 & n.5 (quoting *Vance*, 29 Wash. at 458). We have "also recognized that '[m]edical malpractice claims are fundamentally negligence claims, rooted in the common law tradition.'" *Id.* at 573 (alteration in original) (quoting *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 982, 216 P.3d 374 (2009)). Therefore, our precedent holds that when a statute "limits the ability of certain plaintiffs . . . to bring medical malpractice claims," the statute "grants an immunity (and burdens a privilege) triggering the reasonable ground test under article I, section 12." *Id.* at 573-74.

The United States seeks to distinguish this precedent by arguing that Bennett is not, in fact, asserting the fundamental right to pursue a common law cause of

14

action.  Instead, according to the United States, Bennett asserts only "a supposed

fundamental right to an unlimited discovery rule."  Def.-Appellee's Answering Br.

at 20.  The United States argues that this "unlimited discovery rule" cannot be part

of the fundamental right to pursue a common law cause of action because the

discovery rule of accrual did not exist at common law when article I, section 12

was adopted.  The United States further contrasts this case with *Schroeder*, in

which "[t]he specific right at issue" was "the right to tolling of a statute of

limitations during minority," which did exist at common law prior to statehood.

*Id.* at 43-44 (citing CODE OF 1881, § 37).

We cannot follow the United States' approach to this issue because it is

inconsistent with our precedent.  *Schroeder* did not narrowly consider "the right to

tolling of a statute of limitations during minority," and it did not discuss or cite any

provisions from the Washington Territorial Code.  *Contra id.*  Instead, *Schroeder*

broadly defined the right in question as "the right to pursue common law causes of

action in court," reaffirmed that medical malpractice actions are "'rooted in the

common law tradition,'" and applied the reasonable ground test to "scrutinize the

legislative distinction" that existed in *current* law.  179 Wn.2d at 573-74 (quoting

*Putman*, 166 Wn.2d at 982).  The United States' narrow reading of *Schroeder* is

thus inconsistent with the actual analysis we applied in that case.

15

*Bennett v. United States,* No. 101300-1

Moreover, although the *existence* of a fundamental right of state citizenship is generally determined by reference to early case law, the *scope* of fundamental rights can, and must, change over time. For example, although the fundamental right "to marry" was likely recognized when article I, section 12 was adopted in 1889, it certainly did not include the right "to marry *whomever* [*we*] *choose*" until much later. *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *Woods*, 197 Wn.2d at 243 (emphasis added); *see Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); *Obergefell v. Hodges*, 576 U.S. 644, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015). Nevertheless, for purposes of article I, section 12, the fundamental right to marry applies to everyone; its scope is not limited to the right to marry as it was recognized in 1889. *Woods*, 197 Wn.2d at 243-44.

Thus, the question in this case is not whether there is a fundamental right to the discovery rule of accrual.[4] Instead, the question is whether the statute of repose implicates the fundamental "right to pursue common law causes of action in court" by granting "privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." *Schroeder*, 179 Wn.2d at 573; CONST. art.

---

[4] Indeed, we have recognized that eliminating the discovery rule of accrual with "a general statute of repose applying to all tort claims" might not violate article I, section 12 at all. *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 145 n.1, 960 P.2d 919 (1998).

16

*Bennett v. United States,* No. 101300-1

I, § 12. In light of this court's controlling precedent, we must hold that the answer is yes.

If a medical malpractice action does not accrue within the eight-year repose period, then it can never be brought. In such a case, as in *Schroeder*, the defendant is granted "an article I, section 12 'immunity'" from the plaintiff's common law cause of action. 179 Wn.2d at 573. Such immunity explicitly does "*not* equally belong to all citizens, or corporations" because the statute of repose "is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect," and it "does not apply to a civil action based on intentional conduct . . . for injury occurring as a result of childhood sexual abuse." CONST. art. I, § 12 (emphasis added); RCW 4.16.350(3). Thus, only "certain defendants" are entitled to immunity pursuant to the statute of repose, thereby "triggering article I, section 12's reasonable ground analysis." *Schroeder*, 179 Wn.2d at 573.

3.     The statute of repose is not supported by reasonable grounds

In the second step of our article I, section 12 analysis, we must "scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal." *Id.* at 574. In accordance with our precedent, we must conclude that the legislature's stated rationale is not, in fact, served by the statute of repose as

17

*Bennett v. United States,* No. 101300-1

enacted in 2006. Therefore, the statute of repose cannot satisfy the reasonable ground test.

a. Background on RCW 4.16.350(3)'s statute of repose

Because the reasonable ground test requires careful consideration of the legislative purposes underlying the challenged statute, it is first necessary to briefly review the legislative history of the statute of repose.

As discussed above, after this court first recognized the discovery rule of accrual for tort actions, the legislature responded "in 1971 by enacting RCW 4.16.350." *Gunnier*, 134 Wn.2d at 861. As originally enacted, RCW 4.16.350 did not contain a separate statute of repose. Instead, RCW 4.16.350 provided only that a medical malpractice action "based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, or (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, whichever period of time expires last." LAWS OF 1971, ch. 80, § 1. The eight-year statute of repose was added in 1976, and RCW 4.16.350 was subsequently amended several more times. LAWS OF 1975-76, 2d Ex. Sess., ch. 56, § 1.

*Bennett v. United States,* No. 101300-1

By 1998, the operative language of RCW 4.16.350 was essentially[5] identical to the current statute. LAWS OF 1998, ch. 147, § 1. That same year, this court struck down the statute of repose as unconstitutional in *DeYoung v. Providence Medical Center*, 136 Wn.2d 136, 960 P.2d 919 (1998). *DeYoung* predates our recognition of heightened protections for article I, section 12 claims, so we applied only "rational basis" review. *Id.* at 144. We concluded that the statute of repose could have legitimate purposes, including responding "to a perceived insurance crisis" and "the barring of stale claims." *Id.* at 147, 150. Nevertheless, we held that the statute was "too attenuated to survive rational basis scrutiny" due to "the minuscule number of claims subject to the repose provision." *Id.* at 149-50.

Eight years after *DeYoung*, the legislature "reenacted" the same statute of repose, using the same operative language. LAWS OF 2006, ch. 8, § 302. This time, however, the legislature added a separate section "expressly stating [its] rationale" to "respond to the court's decision in *DeYoung*." *Id.* § 301. The legislature's stated rationale was that the statute of repose "will tend to reduce rather than increase the cost of [medical] malpractice insurance" and "will provide protection against claims, however few, that are stale, based on untrustworthy evidence, or that place undue burdens on defendants." *Id.* The legislature "further [found] that

---

[5] The only difference between the current statute and the version that existed in 1998 is that masculine pronouns ("his") have now been replaced with binary pronouns ("his or her"). *Compare* LAWS OF 1998, ch. 147, § 1, *with* LAWS OF 2011, ch. 336, § 88.

19

*Bennett v. United States,* No. 101300-1

an eight-year statute of repose is a reasonable time period in light of the need to balance the interests of injured plaintiffs and the health care industry." *Id.*

We recognize the legislature's good faith in responding to our opinion in *DeYoung*. Setting the outer time limit for commencement of a civil action is a difficult but necessary task in light of the important policy interests at stake. In this case, the legislature's task was even more challenging because our article I, section 12 jurisprudence was still developing when the legislature reenacted the statute of repose in 2006. Nevertheless, we must apply the protections of article I, section 12 in accordance with this court's controlling precedent. To do so, we must "scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal." *Schroeder*, 179 Wn.2d at 574.

> b.   As reenacted in 2006, the statute of repose is not supported by reasonable grounds

When the legislature reenacted the statute of repose, it provided three specific rationales for doing so: controlling malpractice insurance costs, barring stale claims, and balancing the interests of patients and health care providers. LAWS OF 2006, ch. 8, § 301. We reaffirm that these are all legitimate legislative purposes. *See DeYoung*, 136 Wn.2d at 147-48, 150.

We also reaffirm that "[t]he article I, section 12 reasonable ground test is more exacting than rational basis review" because, unlike rational basis review, the reasonable ground test does not allow courts to "hypothesize facts to justify a

20

*Bennett v. United States,* No. 101300-1

legislative distinction." *Schroeder*, 179 Wn.2d at 574. Nevertheless, the legislature is not required to satisfy an evidentiary burden before exercising its broad authority to legislate. The reasonable ground test requires heightened scrutiny, but it does *not* mean that every legislative classification implicating a fundamental right of state citizenship is "'subject to courtroom fact-finding.'" *DeYoung*, 136 Wn.2d at 147 (quoting *Gossett v. Farmers Ins. Co.*, 133 Wn.2d 954, 979, 948 P.2d 1264 (1997)). Instead, we must interpret the language of the statute of repose and the legislature's stated rationale to determine whether "the principle for which the statute really stands" is consistent with its underlying rationale. *Schroeder*, 179 Wn.2d at 576. In other words, there must be a nexus between the legislature's stated purpose and the challenged statute, which cannot rest solely on hypothesized facts.

The legislature's first asserted rationale for the statute of repose was that "to the extent that the eight-year statute of repose has an effect on medical malpractice insurance, that effect will tend to reduce rather than increase the cost of malpractice insurance." LAWS OF 2006, ch. 8, § 301. Thus, the legislature did not assert that the statute of repose would, in fact, decrease the cost of medical malpractice insurance. Moreover, our precedent holds that we cannot "hypothesize facts" to conclude that the statute of repose would have such an effect. *Schroeder*, 179 Wn.2d at 574. Therefore, the legislature's legitimate interest in reducing

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

medical malpractice insurance premiums does not provide a reasonable ground for the statute of repose.

Next, the legislature stated that the statute of repose "will provide protection against claims, however few, that are stale, based on untrustworthy evidence, or that place undue burdens on defendants" because "compelling even one defendant to answer a stale claim is a substantial wrong, and setting an outer limit to the operation of the discovery rule is an appropriate aim." LAWS OF 2006, ch. 8, § 301. We have previously interpreted this language when deciding an article I, section 12 challenge to a different statute, former RCW 4.16.190(2) (2006), "which eliminate[d] tolling of the statute of limitations for minors in the context of medical malpractice claims." *Schroeder*, 179 Wn.2d at 569. As a result, our analysis in *Schroeder* necessarily informs our analysis in this case.

*Schroeder* determined that this legislative rationale properly related to the "'substantial wrong'" of "'compelling a defendant to answer a stale claim.'" *Id.* at 576 (quoting *DeYoung*, 136 Wn.2d at 150). We then considered whether the challenged statute had a sufficient nexus to its stated rationale, and we held that it did not. To the contrary, the plain language of the challenged statute in *Schroeder* was "not addressed to stale claims generally" because it applied only to "medical malpractice injuries to minors." *Id.* Thus, in direct contrast to its stated rationale, the challenged statute in *Schroeder* indicated that "a stale claim is *not* a substantial

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

wrong—at least, not substantial enough to warrant preventative legislation—when it is brought by a plaintiff who was unable to sue at the time of injury for any reason other than minority." *Id.*

In this case, we must similarly conclude that the eight-year statute of repose in RCW 4.16.350(3) is not addressed to stale claims generally, in light of the explicit exemptions and tolling provisions noted above. Thus, like the statute in *Schroeder*, "the principle for which the statute [of repose] really stands is not that 'compelling even one defendant to answer a stale claim is a substantial wrong.'" *Id.* (quoting LAWS OF 2006, ch. 8, § 301). Rather, the statute of repose stands for the principle that requiring a medical malpractice defendant to answer a stale claim is a substantial wrong *unless* (1) the action is brought by a plaintiff who can prove "fraud, intentional concealment, or the presence of a foreign body" or (2) the action is based on "injury occurring as a result of childhood sexual abuse." RCW 4.16.350(3). Thus, according to its plain language, the statute of repose does not in fact serve the legislature's stated rationale of preventing stale claims generally.

The United States argues that the statute's exceptions "make the statute more reasonable, not less, because they limit the harshest consequences of the rule." Def.-Appellee's Answering Br. at 59. As a general proposition, we agree; indeed, we have already held that "[t]here are reasonable grounds for the tolling and other statutory provisions which except a cause of action from the eight-year bar."

23

*DeYoung*, 136 Wn.2d at 146. However, for purposes of article I, section 12, the question is not whether the statute's *exceptions* are reasonable. Instead, the question is whether barring those remaining claims, which *are* subject to the statute of repose, in fact serves the legislature's stated rationale. *See Schroeder*, 179 Wn.2d at 576-77. Based on this court's controlling precedent, we must hold that the answer is no.

Finally, in its statement of rationale, the legislature asserted "that an eight-year statute of repose is a reasonable time period in light of the need to balance the interests of injured plaintiffs and the health care industry." LAWS OF 2006, ch. 8, § 301. Along the same lines, the United States argues that "the reenacted statute of repose was part of a larger compromise" and that the statute of repose "aligns with the judgment of many other state legislatures." Def.-Appellee's Answering Br. at 57-58. In accordance with our precedent, we must hold that the asserted legislative compromise, by itself, is insufficient to show that the statute of repose is supported by reasonable grounds.

Most notably, the challenged statute in *Schroeder* was adopted alongside the statute of repose at issue here; indeed, they were neighboring sections of the same bill. LAWS OF 2006, ch. 8, §§ 302-303. The plaintiff's article I, section 12 claim was successful in *Schroeder* despite the underlying legislative compromise, a point that the dissent explicitly highlighted in that case. *See* 179 Wn.2d at 581 (J.M.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Johnson, J., dissenting) ("RCW 4.16.190 and RCW 4.16.350 were amended in 2006 as part of a complicated legislative compromise."). Therefore, to hold that the legislative compromise underlying the statute of repose is sufficient to defeat Bennett's article I, section 12 claim in this case, we would need to disavow *Schroeder*, which no party has asked us to do.

In addition, to the extent the United States urges us to follow the law of other states, we decline to do so. We have already acknowledged that "[a] clear majority" of other states have upheld "the constitutionality of medical malpractice statutes of repose." *DeYoung*, 136 Wn.2d at 150 n.4. Nevertheless, we have previously declined "to draw generalizations" from other jurisdictions "because the cases involve both state and federal constitutional claims . . . [and] the statutes vary widely." *Id.* We follow the same path today.

In sum, the answer to the first certified question is yes: RCW 4.16.350(3)'s eight-year statute of repose for medical malpractice actions violates the heightened protections of article I, section 12's privileges and immunities clause as a matter of independent state law. Therefore, we need not reach the second certified question regarding access to the courts pursuant to article I, section 10.

## CONCLUSION

We reaffirm the legislature's authority to set time limits for commencement of civil actions, and we recognize the challenging nature of that task in light of the

25

**For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.**

*Bennett v. United States,* No. 101300-1

competing policy interests at stake. Nevertheless, in accordance with our precedent, we must hold that RCW 4.16.350(3)'s statute of repose for medical malpractice claims violates the privileges and immunities clause of article I, section 12 as a matter of independent state law. We decline to reach the second certified question.

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____

_____
Gordon McCloud, J.

_____

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Darvas, J.P.T.

26

*Bennett v. United States of Am.*

No. 101300-1

MADSEN, J. (concurrence/dissent)—I agree with the majority that RCW 4.16.350(3)'s statute of repose grants immunity only to "'certain defendants'" under article I, section 12 of the Washington Constitution.  Majority at 17 (quoting *Schroeder v. Weighall*, 179 Wn.2d 566, 573, 316 P.3d 482 (2014)).  I depart from the majority's conclusion that reasonable grounds do not support the challenged statute.  *Id.* at 17, 20-25.

In *DeYoung v. Providence Medical Center*, we struck down, as unconstitutional, the predecessor to RCW 4.16.350(3) because we were forced to speculate about the reasonable bases underlying it.  136 Wn.2d 136, 149-50, 960 P.2d 919 (1998).  Lawmakers reenacted the statute of repose, adding specific and extensive findings.  LAWS OF 2006, ch. 8, §§ 301, 302.  Again, the majority strikes down the statute, this time based on a lack of nexus with the legislature's "legitimate legislative purposes."  Majority at 20, 21.  I disagree.

While courts may not speculate or "hypothesize facts to justify a legislative distinction," *Schroeder*, 179 Wn.2d at 574, such hypothesis is unnecessary here.

No. 101300-1

> The legislature consulted *DeYoung* and responded accordingly, stating,
>
> The purpose of this section and section 302 of this act is to respond to the court's decision in *DeYoung*. . . by expressly stating the legislature's rationale for the eight-year statute of repose in RCW 4.16.350.

LAWS OF 2006, ch. 8, § 301.  The legislature then outlined those rationales:  to control the cost of medical malpractice insurance, to recognize that requiring defense against a stale claim is a substantial wrong, and to balance the interests of injured plaintiffs and the health care industry.  *Id.*

Statutes of repose eliminate an avenue of redress for injured litigants based on policy considerations.  *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 574-75, 146 P.3d 423 (2006); Josephine Herring Hicks, Note, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 VAND. L. REV. 627, 632 (1985).  Among other things, statutes of repose are intended to prevent plaintiffs from bringing stale or frivolous claims against defendants when evidence may have been lost or witnesses are no longer available.  *See 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apt. Sales Corp.*, 144 Wn.2d 570, 578, 29 P.3d 1249 (2001) (recognizing the purposes underlying the construction statute of repose); *see also* Hicks, *supra*, at 632 ("As time passes, records are lost, memories fade, technology advances, and intervening circumstances arise, creating problems for a defendant attempting to present a proper defense.").  Designed to avoid stale claims, statutes of repose will capture only a nominal amount of such claims.  *See, e.g.*, LAWS OF 2006, ch. 8, § 301 (eight-year statute of repose will protect "against claims, however few, that are stale" or "based on untrustworthy evidence").

No. 101300-1

The legislature was aware of these considerations when reenacting the statute of repose. Though RCW 4.16.350(3) would affect only a small number of stale claims, requiring defendants to answer even one is a substantial wrong. *Id.* As *DeYoung* noted, the preceding "repose provision affecting so few claims" could not have a meaningful impact on the medical malpractice industry. 136 Wn.2d at 148-49. The legislature responded that though the current repose statute "*alone* may not solve" a malpractice insurance crisis, to the extent the statute "has an effect" on the malpractice industry, "that effect will tend to reduce rather than increase the cost of malpractice insurance." LAWS OF 2006, ch. 8, § 301 (emphasis added). Finally, the legislature balanced the interests of injured plaintiffs against those of the health care industry by finding an eight-year period to be reasonable. *Id.*

In my view, it is one thing for courts to reject legislation that required speculation as to reasonable grounds—as we did in *DeYoung*. It is another thing to reject the legislature's articulated rationale, enacted explicitly to answer this court's stated concern, as unreasonable. Indeed, *DeYoung* acknowledged that the prior statute of repose could have legitimate purposes, such as responding to the insurance crisis and barring stale claims. *See* majority at 19-20. As discussed above, the legislature took our advice.

Yet the majority still finds the stated rationales wanting, primarily because lawmakers failed to *factually* connect those rationales to the statute. *See id.* at 21-25. The majority relies on *Schroeder* for this factual test. *Id.* at 20. *Schroeder* stated that a reviewing court's scrutiny of a legislative determination is a factual one, but the decision did not explain the contours of the test. *See* 179 Wn.2d at 574. Rather, *Schroeder* relied

3

No. 101300-1

on *State ex rel. Bacich v. Huse*, 187 Wash. 75, 82, 59 P.2d 1101 (1936), *overruled on other grounds by Puget Sound Gillnetters Ass'n v. Moos*, 92 Wn.2d 939, 603 P.2d 819 (1979), which overruled a statute allowing protections for gillnet licenses partially because the provision did not "accomplish the purposes suggested" by the State. *Id.* *Bacich* in turn explained that the "legislature has a wide measure of discretion" when enacting legislation and that "its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust." *Id.* at 80-81 (citing cases). In determining whether a reasonable basis existed for the gillnet license, *Bacich* concluded it was "not predicated on any fair, just, or natural basis of selection" but was "wholly arbitrary and capricious." *Id.* at 81.

The *Bacich* court then explained why the statute lacked a reasonable basis. The statute was expressly limited to persons holding gillnet licenses for 1932 or 1933. *Id.* at 82. This created a "peculiar state of affairs" for license holders—those immediately engaged in gillnet fishing at the time the measure went into effect (1934) would not be guaranteed a continued means of livelihood, while those who had been engaged in that business in 1932 but had ceased would be entitled to resume. *Id.* at 82-83. If the act was meant to protect those for whom gillnetting was the sole means of their livelihood, the *Bacich* court held that the measure failed to accomplish that goal. *Id.* at 83. If conservation was the goal, it was not promoted by arbitrarily selecting a particular class of persons and bestowing a special privilege on them but denying the same privilege to others. *Id.* at 84.

4

No. 101300-1

*Schroeder*'s factual test must be informed by the precedent on which it was built. *Bacich* considered whether a statute was reasonable and just or arbitrary and inequitable in light of the State's argument. *Id.* at 80-81. *Schroeder*, building on *Bacich*, similarly reviewed a legislative pronouncement against the State's argument and concluded there was no factual support for that pronouncement. 179 Wn.2d at 574. Both cases reviewed the rationales underlying a legislative measure and considered whether the measure advanced the stated goals. The cases did not, however, second-guess those goals.

Despite its protestations, the majority in this case subjects RCW 4.16.350(3) and the legislature's policies underlying it to "'courtroom fact-finding.'" Majority at 21 (quoting *DeYoung*, 136 Wn.2d at 147) (internal quotation marks omitted). The majority second-guesses the legislature's policies, contrary to *Schroeder* and *Bacich*. I disagree. In my view, the stated rationales for the eight-year statute of repose comport with both cases.

As previously stated, RCW 4.16.350's first rationale was "to the extent that the eight-year statute of repose has an effect on medical malpractice insurance, that effect will tend to reduce rather than increase the cost of malpractice insurance." LAWS OF 2006, ch. 8, § 301. The majority dismisses this rationale because lawmakers failed to state that the statute would "in fact" lower the cost of malpractice insurance. Majority at 21. But this reasoning substitutes the majority's desired level of fact-finding for that of the legislature. In essence, lawmakers recognized that *if* the statute has an effect on malpractice insurance, RCW 4.16.350 would *tend* to lower the cost. This may be

5

No. 101300-1

legislative hedging, but it is not unconstitutional hedging. Nor has there been any argument that the finding is false.

Second, the legislature found the statute of repose would protect against stale claims, however few, because compelling a defendant to answer even one such claim is "a substantial wrong." LAWS OF 2006, ch. 8, § 301. This finding was plainly taken from *DeYoung*, where the State defended the earlier statute of repose "under another conceivable set of facts"—barring stale claims that are more difficult to establish because evidence may be lost or gone. 136 Wn.2d at 149-50. *DeYoung* noted that compelling a defendant to answer a stale claim is a substantial wrong and setting an outer limit for the discovery rule is an appropriate aim. *Id*. at 150 (citing *Ruth v. Dight*, 75 Wn.2d 660, 664-66, 453 P.2d 631 (1969)). Although the goal was "legitimate," *DeYoung* found the small number of claims subject to the repose provision "too attenuated to that goal." *Id*.

Unlike *DeYoung*, we are not considering a conceivable set of facts in the present case. When enacting RCW 4.16.350(3), the legislature adopted the judicially recognized, legitimate, and appropriate goal of preventing defendants from answering even one stale claim. *See* LAWS OF 2006, ch. 8, § 301; *DeYoung*, 136 Wn.2d at 150. There is no suggestion that this goal is false, unjust, or arbitrary. The statute of repose accomplishes the goal of preventing a defendant from answering even the smallest number of stale claims by precluding malpractice suits that fall outside the eight-year time period.

The majority leans on *Schroeder*'s dismissal of similar language in a different statute, which eliminated tolling of a statute of limitations for minors bringing medical malpractice suits. Majority at 22. Part of the *Schroeder* court's reasoning was that the

6

limitations statute did not address "'stale claims generally'" because it applied only to malpractice claims for minors. *Id.* at 22 (quoting *Schroeder*, 179 Wn.2d at 576). Thus, the court concluded, a stale claim was not a substantial wrong when brought by a plaintiff who could not sue for any other reason than minority. *Id.* The current statute of repose, however, does not concern minors. It concerns medical malpractice claims *generally*. Thus, *Schroeder* does not "necessarily inform[] our analysis" here. *Id.*

The majority builds a deceptively simple and unsupported bridge from our privileges and immunities precedent to the current case. It takes the factual test explored in *DeYoung* and *Schroeder* and expands it, requiring not just articulated legislative findings but putting those findings under a judicial fact-finding microscope. *Schroeder* and its underpinning rationale do not and, in my view, cannot require such scrutiny. Here, under the majority decision, lawmakers will no doubt ask: What findings will pass reasonable ground muster—when is enough enough? Trial judges will be left to wonder what might be the limiting principle for determining when a legislative finding is not supported in fact by reasonable grounds. The majority offers none.

The history of RCW 4.16.350 illustrates how our legislative and judicial branches of government cooperate with each other and the boundaries of those branches. *DeYoung* explained why the legislature's policies for the previous statute of repose were insufficient under article I, section 12. Lawmakers listened and answered those deficiencies when reenacting the current eight-year statute of repose. Without a limiting principle, the conclusion the legislature is left to reach is only that the court disagrees with a legislative decision. This undermines the legislature's confidence in making

No. 101300-1

policy decisions that courts will uphold, absent violation of the law or constitution. *Hall v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 504-06, 198 P.3d 1021 (2009) (recognizing it is the judicial branch's function to interpret the law and the legislature's role to set policy and enact law). It also risks violating the separation of powers, with the court stepping over the line. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1997) ("[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government."); *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994) (an action violates the separation of powers doctrine when the activity of one branch invades the prerogative of another).

I would answer no to the first certified question. RCW 4.16.350(3)'s eight-year statute of repose does implicate an immunity but is supported by reasonable grounds. Therefore, the statute does not violate article I, section 12 of the Washington Constitution.

With these considerations in mind, I respectfully concur in part and dissent in part.

_____
Madsen, J.

_____
Johnson, J.

8