FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

APRIL 30, 2026

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 30, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| FREDERICK K. POLINDER III, as the Executor of the Estate of LEE V. HETTERLY, | ) ) ) ) ) ) | |
| Respondent, | ) ) | No. 102782-6 |
| v. | ) ) | |
| AECOM ENERGY & CONSTRUCTION, INC. et al.,[†] | ) ) ) | En Banc |
| Defendants, | ) ) | |
| BRAND INSULATIONS, INC., | ) ) | Filed: April 30, 2026 |
| Petitioner. | ) ) ) | |

GONZÁLEZ, J.—Lee Hetterly worked as a maintenance worker at the Atlantic Richfield Company (ARCO) Cherry Point refinery for many years. As part of his job, he worked with asbestos-bearing insulation. That insulation had been selected, bought, and installed by Brand Insulations Inc. Asbestos exposure can cause mesothelioma, a deadly disease. Decades later, Hetterly was diagnosed with mesothelioma from which he died.

---

[†] See Appendix for a list of all defendants.

Generally, an injured person has only a limited time to bring a lawsuit. That time begins to run once the person discovers, or should have discovered, they have been injured. Some injuries, like Hetterly's, are not, and cannot be, discovered for many years after those injuries were caused, and thus an injured person may not be able to assert a claim, or a potential defendant defend against it, for decades. Our legislature has enacted several "statutes of repose" that cut off some such claims within a set number of years, regardless of when the person discovers, or should have discovered, they were injured.

Our legislature enacted a six-year repose period for claims arising from construction activities contributing to an improvement on real property. RCW 4.16.300-.310. Brand contends Hetterly's claims should be dismissed, even though Hetterly did not discover his injury until 2021, because the six-year construction statute of repose period passed sometime in the 1970s.

We conclude that to the extent Hetterly's claims arise from Brand's construction work, those claims are barred by the statute of repose. But to the extent Hetterly's claims are based on Brand's activities as a product seller or as a negligent supplier of asbestos-bearing insulation, those claims are not so barred. We do not address the constitutionality of the construction statute of repose as that challenge was not timely made. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

BACKGROUND

ARCO built the Cherry Point refinery in Whatcom County in the late 1960s and early 1970s as a large industrial facility designed to process crude oil into refined petroleum products. ARCO began refining oil there in 1971. A refinery is a collection of several integrated, dependent, yet discretely differentiated systems referred to as process units. *See* Clerk's Papers (CP) at 1212 (Decl. of Melvin M. Sinquefield).

ARCO hired Ralph M. Parsons Co. as the general contractor to build the refinery. Parsons subcontracted with Brand for the vast majority of insulation work throughout the refinery. Brand agreed to furnish both labor and insulation materials for installation on refinery piping, vessels, heat exchangers, and other equipment. Under the contract, Brand was the "seller" of insulation materials and ARCO was the "buyer." *Id*. at 2289-95.

ARCO relied on Brand's insulation expertise. Brand selected insulation products, purchased those products from manufacturers, arranged for their delivery to the refinery, and installed them during construction. ARCO purchased the insulation materials, through its contract with Parsons, from Brand at a marked-up price.

The insulation Brand selected, supplied, and installed contained asbestos. Brand finished its installation work by early 1972. When Brand's work concluded,

asbestos-containing insulation had been installed throughout the facility, and the unused insulation material ARCO had purchased remained on-site for later use.

Hetterly began working at the Cherry Point refinery in 1971. He worked there for more than a decade as a maintenance technician. Hetterly worked with insulated piping and equipment. Insulation was often broken or knocked off pipes and equipment during maintenance and shutdowns, generating dust.

Decades later, Hetterly was diagnosed with malignant mesothelioma. Hetterly sued 53 defendants, alleging his mesothelioma was caused by exposures at various residences and workplaces throughout King and Whatcom Counties from the 1950s to the early 2000s. *See* Br. of Resp't, App. at paras. 4-56, 64 (Pl.'s Third Am. Compl.). Hetterly has died since he brought this lawsuit, but his executor, Frederick K. Polinder, has been substituted as the named plaintiff (Estate). The Estate's claims against Brand arise from alleged asbestos exposure at the Cherry Point refinery.

The Estate argues Brand is liable under strict seller liability and negligence, among other theories. *See* Br. of Resp't at 13-14 (citing App. at paras. 9, 19-21, 59). Brand moved for summary judgment on its construction statute of repose affirmative defense.[1]

---

[1] We note that for purposes of this summary judgment motion, Brand contends that it is irrelevant whether "Hetterly encountered asbestos-containing materials attributable to Brand, and whether that exposure was causative." CP at 92.

*Polinder v. Brand Insulations, Inc.*, No. 102782-6

The trial court initially dismissed the case at summary judgment based on *Maxwell v. Atlantic Richfield Co.*, 15 Wn. App. 2d 569, 476 P.3d 645 (2020). *Maxwell* held the construction statute of repose applied as a matter of law to Brand's installation work at the Cherry Point refinery. *Id.* at 583-85. However, the trial court reconsidered its order and denied summary judgment based on the subsequent decision in *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 531 P.3d 265 (2023). Summary judgment is inappropriate if there are material of questions of fact, and *Welch* held a material question of fact exists regarding application of the construction statute of repose to Brand's installation work at the Cherry Point refinery because Brand did not show it contributed to a structural improvement or an integral system. *Id.* at 125-26. Because of the conflicting Court of Appeals decisions, we granted direct interlocutory review. *See* RAP 2.3(b)(1); RAP 4.2(a)(3).[2]

ANALYSIS

"Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

---

[2] The Estate asks us to address whether the construction statute of repose bars its seller liability claim against Brand because the trial court initially dismissed that claim pursuant to *Maxwell*, 15 Wn. App. 2d at 582-83. Under RAP 2.4(a), "[t]he appellate court will, at the instance of the respondent, review those acts in the proceeding below which if repeated on remand would constitute error prejudicial to respondent." Because the trial court reinstated all of the Estate's claims against Brand, the interest of justice supports addressing this fully developed ground for affirming the trial court's decision. RAP 12.2; *see also* RAP 2.5(a).

5

*Polinder v. Brand Insulations, Inc.*, No. 102782-6

*Rublee v. Carrier Corp.*, 192 Wn.2d 190, 198, 428 P.3d 1207 (2018). As the moving party, Brand has the burden of showing the absence of a question of material fact. *See Galassi v. Lowe's Home Ctrs., LLC*, 4 Wn.3d 425, 434-35, 565 P.3d 116 (2025); CR 56(e).

We review questions of statutory interpretation de novo, with the goal of carrying out the legislature's intent. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

Our legislature enacted the construction statute of repose, RCW 4.16.300-.310, to limit the otherwise generally applicable discovery rule "to protect architects, contractors, engineers, surveyors and others from extended potential tort and contract liability." *Hudesman v. Meriwether Leachman Assocs.*, 35 Wn. App. 318, 321, 666 P.2d 937 (1983) (citing *Pinneo v. Stevens Pass, Inc.*, 14 Wn. App. 848, 545 P.2d 1207 (1976)); *see also 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apt. Sales Corp.*, 144 Wn.2d 570, 578, 29 P.3d 1249 (2001). Statutes of repose differ from statutes of limitation because "[a] statute of limitation bars [a] plaintiff from bringing an already accrued claim after a specified period of time," whereas a "statute of repose terminates a right of action after a specific time, even if the injury has not yet occurred." *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 211-12, 875 P.2d 1213 (1994); *see also Wash. State Major League Baseball Stadium Pub.*

6

*Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 176 Wn.2d 502, 511, 296 P.3d 821 (2013).

Under the construction statute of repose, "the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction." RCW 4.16.310. The construction statute of repose is an affirmative defense that applies to claims or causes of action brought against a person for having "constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property." RCW 4.16.300. Put another way, the six-year repose period applies only to claims arising from construction activities contributing to an improvement on real property.

The construction statute of repose does not apply to claims outside its scope. In *Pfeifer v. City of Bellingham*, we held that when "builders also engage in the activity of selling, they should face the liability of sellers." 112 Wn.2d 562, 568, 772 P.2d 1018 (1989). "[T]he focus is on activities." *Id*. at 569. Thus, to the extent the Estate's claims arise from Brand's activities as a product seller or negligent supplier, rather than from acts or omissions undertaken in constructing an improvement, the statute of repose does not apply. *See Simonetta v. Viad Corp.*,

165 Wn.2d 341, 355, 197 P.3d 127 (2008) ("We justify imposing liability on the defendant who, by manufacturing, selling, or marketing a product, is in the best position to know of the dangerous aspects of the product and to translate that knowledge into a cost of production against which liability insurance can be obtained.").

Claims arising from breaches of independent product seller or supplier duties are not barred merely because a product is incorporated into an improvement on real property. *See Pfeifer*, 112 Wn.2d at 568-70; *Morse v. City of Toppenish*, 46 Wn. App. 60, 62-66, 729 P.2d 638 (1986) (holding a diving board was a product incorporated into an improvement to real property and subject to product liability law, not the construction statute of repose); *see also Cameron v. Atl. Richfield Co.*, 8 Wn. App. 2d 795, 805-06, 442 P.3d 31 (2019) (claims that arose from a company's activities as premises owner are not barred by the construction statute of repose).

The Estate seeks to hold Brand liable as a seller and negligent distributor of asbestos-containing insulation under the common law.[3] *See* Br. of Resp't, App. at paras. 9, 19-21, 59. On this record, Brand does not meet its initial burden of

---

[3] The Washington product liability act, ch. 7.72 RCW, does not apply because the Estate's claims arose before July 26, 1981. RCW 4.22.920. The parties dispute whether Brand is strictly liable as a seller under *Restatement (Second) of Torts* § 402A (A.L.I. 1965). We note that even if Brand is not strictly liable as a seller, a supplier of asbestos-containing insulation is required to exercise ordinary care. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 388.

establishing that all of the Estate's claims arise from construction activity within the scope of the statute of repose.

Viewed in the light most favorable to the Estate, the record supports a reasonable inference that Brand was a seller, not just a contractor. Among other things, the record suggests:

- ARCO relied on Brand's insulation expertise;

- Brand had discretion to select the asbestos-bearing insulation material;

- Brand purchased and resold the asbestos-bearing insulation to ARCO at a marked-up price;

- After construction, ARCO retained unused asbestos-bearing insulation material that Brand supplied.

There is, at least, a material question of fact as to whether Brand was a product seller or a negligent supplier. Thus, under these facts, summary judgment over whether Brand's conduct is subject to seller or supplier liability would be inappropriate.

We next consider whether Brand's construction activities fall within the scope of the construction statute of repose. In *Condit v. Lewis Refrigeration Co.*, this court considered whether a conveyor belt of a freezer tunnel system installed at a food processing plant constituted an "improvement upon real property" within the scope of the construction statute of repose. 101 Wn.2d 106, 107-09, 676 P.2d

466 (1984). The plaintiff, who was "injured when her arm passed between an exposed gear and a conveyor belt she was cleaning," brought an action against the freezer tunnel system's designer, manufacturer, and installer. *Id.* at 108. We held that the statute of repose did not apply because the freezer tunnel system's "conveyor belt and refrigeration unit which caused the injury" were not an "improvement on real property" but, rather, were "accoutrements to the manufacturing process." *Id*. at 112.

*Condit* cautions against a mechanistic approach to applying the construction statute of repose. *Id*. at 110. Instead, we held the construction statute of repose must be interpreted to give effect to the intent and purpose of the legislation. *Id*. We explained the construction statute of repose "focuses on individuals whose activities relate to construction of the improvement, rather than those who service or design items within the improvement." *Id*. We recognized the following rule:

> "The legislative intent . . . quite obviously was not to limit the exposure of manufacturers and purveyors of products which are used in the factory, shop or home, or those who service these products. As best we can perceive, the intent of the language of the statute was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real estate and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended."

*Id.* at 110-11 (quoting *Brown v. Jersey Cent. Power & Light Co.*, 163 N.J. Super. 179, 195, 394 A.2d 397 (1978)). This rule identifies the kinds of construction

activity the legislature intended to protect. We "believe[d] our statute also should be so limited"; accordingly, the construction statute of repose "protects individuals who work on structural aspects of the building but not manufacturers of heavy equipment or nonintegral systems within the building." *Id*. at 111. We also cautioned that the construction statute of repose should not be interpreted to allow an end run around product liability law.

> Furthermore, if these individuals were protected, they could easily avoid product liability law, if they desired, by simply bolting, welding the equipment or fastening it in some other manner to the building. Mechanical fastenings may attach a machine to the building, but they do not convert production equipment into realty or integrate machines into the building structure, for they are not necessary for the building to function as a building.

*Id*. Finally, we contrasted the freezer tunnel system at issue with integral parts of an improvement such as refrigeration systems used to cool a cold storage warehouse and central air conditioning systems. *Id*. at 112 (citing *Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972); *Brown*, 163 N.J. Super. at 195); *see also Puente v. Res. Conserv. Co. Int'l*, 5 Wn. App. 2d 800, 812-13, 428 P.3d 415 (2018) (holding the construction statute of repose did not apply to the company that designed and built a boric acid evaporator system because, while integral to the operation of the production lines manufacturing process, it was not "integrated into and a part of the structure itself" (citing *Condit*, 101 Wn.2d at 112)).

11

Two Court of Appeals decisions have recently considered whether plaintiffs' claims that Brand's activities at the Cherry Point refinery caused their injuries should be dismissed at summary judgment based on Brand's construction statute of repose affirmative defense. These cases reached opposite conclusions: *Maxwell* affirmed summary judgment for Brand and *Welch* reversed summary judgment for Brand.[4]

First, the *Maxwell* court held that the proper "question is whether the person's activities involved the construction of a real property improvement," not "whether the insulation that Brand installed constituted an improvement upon real property." 15 Wn. App. 2d at 583. "The focus is not on the materials that the person uses in the construction." *Id. Maxwell* held that the Cherry Point refinery was an improvement on real property and that Brand performed "a portion of that construction – the installation of insulation in certain parts of the refinery." *Id*. at 585. It also noted that Brand had not "manufactured or installed some independent system that was merely housed within the refinery structure" and that the "entire refinery included" the areas of Brand's work (i.e., columns, heat exchangers, vessels, reformers, tanks, and piping in the various refinery units). *Id*.

---

[4] In neither case did Brand attempt to show it contributed to systems that are integrally a normal part of a structural improvement and required for the structure to function as intended. *See Maxwell*, 15 Wn. App. 2d at 586 n.5; *Welch*, 27 Wn. App. 2d at 128 n.13. In contrast, here, Brand provided expert testimony on a refinery's need for insulation.

Accordingly, the *Maxwell* court held Brand's activities related to the construction

of the improvement. *Id.* (quoting *Condit*, 101 Wn.2d at 110).[5]

Second, in contrast, the *Welch* court held the proper question is "whether

Brand's activities contributed to a structural improvement or an integral system."

27 Wn. App. 2d at 125-26. The *Welch* court held Brand had to, and did not, point

to

> facts establishing that by installing insulation on the various
> components listed in its subcontract with Parsons, Brand contributed to
> the construction of either (1) "'a structural improvement to real estate'"
> or (2) "'systems . . . which are integrally a normal part of that kind of
> improvement, and which are required for the structure to actually
> function as intended.'"

*Id.* at 127 (alteration in original) (quoting *Condit*, 101 Wn.2d at 110-11 (quoting

*Brown*, 163 N.J. Super. at 195)). The *Welch* court criticized the *Maxwell* court's

use of "involved" as having improperly "reframed" the inquiry from *Condit*, but

agreed with the *Maxwell* court that "the proper question is not 'whether the

insulation . . . constituted an improvement upon real property' and that '[t]he focus

is not on the materials that the person uses in the construction.'" *Id.* at 121-23

(alterations in original) (footnote omitted) (quoting *Maxwell*, 15 Wn. App. 2d at

583); *see also id.* at 125 n.8. The *Welch* court also noted, based on the record

before it, "Brand's insulation installation activities did *not* contribute to systems

---

[5] The *Maxwell* court also recognized that a person who furnishes and installs a product, without
more, is not a seller of that product. *See* 15 Wn. App. 2d at 583.

that are normally a part of a refinery and necessary for it to function as intended" because the Cherry Point refinery began refining oil before Brand's services were complete. *Id*. at 128 n.13.

We hold that *Welch*'s criticisms of *Maxwell* are well taken. The construction statute of repose requires Brand to show more than its activities simply "involve" construction or "relate to" construction. Nevertheless, we disagree with the *Welch* court's conclusion that the *Maxwell* court meaningfully departed from *Condit*.

*Condit* did not purport to define the outer limits of what may constitute an improvement on real property. To benefit from the construction statute of repose, Brand must show its activities contributed to the construction of an improvement on real property or systems that are a normal and integral part of that kind of improvement for the improvement to function as intended. *See Condit*, 101 Wn.2d at 110-11. "Improvement" is a broad term, and the protections of the construction statute of repose are not limited to individuals working on the structural aspects of a building, nor are they limited to improvements that are buildings. *See* BLACK'S LAW DICTIONARY 904 (12th ed. 2024) (defining "improvement" as "[a]n addition to property, usu[ally] real estate, whether permanent or not; esp[ecially], one that increases its value or utility or that enhances its appearance"). Here, Brand's charge was to furnish all material, labor, and labor supervision for the installation

14

of thermal insulation at the Cherry Point refinery as part of its construction. The Cherry Point refinery, composed of miles of piping systems, multiple vessels, and related equipment, constitutes an improvement on real property. *See* CP at 1212. Brand's construction activities, therefore, contributed to the Cherry Point refinery's construction.

The trial court came to a different conclusion, in part, because Brand's services continued the year after the Cherry Point refinery began refining oil. *Id*. at 2384 (citing *Welch*, 27 Wn. App. 2d at 128 n.13). We disagree with this aspect of the trial court's decision because the legal character of a refinery as an improvement does not change when a refinery begins operating or when some portion of the improvement is out of service.

There is no genuine dispute that Brand's installation activities contributed to systems that are a normal and integral part of a refinery for the Cherry Point refinery to function as intended. Brand submitted an expert declaration showing the thermal insulation Brand installed on the various refinery systems was necessary for refineries to operate and without which the Cherry Point refinery could not operate as intended. *See id*. at 1212-23. The trial court found a dispute of material fact because Brand and the Estate submitted purportedly conflicting evidence on whether insulation was integral to a refinery. However, on close

examination, the Estate did not present evidence that refineries may operate as intended without insulation.

Brand has established as a matter of law both (a) that its installation of thermal insulation contributed to the construction of an improvement on real property and (b) that such insulation was a normal and integral component required for the Cherry Point refinery to function as intended. To the extent Hetterly's injuries arose from that construction, his claims are barred by the statute of repose.

But the construction statute of repose does not bar the Estate from bringing claims arising from Brand's independent duties as a product seller or supplier even if such claims may relate to construction activities. We recognize that the distinction may be difficult to draw in some circumstances but conclude that concerns that recognizing seller liability would undermine the construction statute of repose are misplaced. The Estate cannot avoid the construction statute of repose merely by recharacterizing a claim arising from Brand's construction activity as a product claim, but where liability can be established without proof of Brand's construction activity, the statute of repose does not apply.

Finally, the Estate contends that it would violate the privileges and immunities clause, article I, section 12, of the state constitution, for the construction statute of repose to bar this lawsuit. *See* Br. of Resp't at 4 (citing *Bennett v. United States*, 2 Wn.3d 430, 539 P.3d 361 (2023)). Brand contends that

16

the construction statute of repose is constitutional because the legislative purpose was to eliminate stale claims but that the statute's constitutionality should not be considered for the first time on appeal. We decline to reach the Estate's constitutional challenge because it was not presented to the trial court and the Estate does not address our case law upholding the statute's constitutionality. RAP 2.5(a); *see, e.g., 1519-1525 Lakeview Blvd. Condo. Ass'n*, 144 Wn.2d at 582; *see also Cameron*, 8 Wn. App. 2d at 811.

## CONCLUSION

We hold that Brand established that its insulation installation contributed to the construction of an improvement on real property, the Cherry Point refinery, and was integral to the refinery's operation. The construction statute of repose, therefore, bars claims arising from those construction activities. However, Brand has not established as a matter of law that the Estate's claims solely arise from such activities. The Estate's claims arising from Brand's independent product seller or supplier duties are not barred.

We affirm in part, reverse in part, and remand back to the superior court for further proceedings consistent with this opinion.

17

_____
Gonzáleż, J.

WE CONCUR:

_____
Stephens, C.J.

_____

_____

_____

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____
Mungia, J.

_____
Yu, J.P.T.

APPENDIX

LIST OF ALL DEFENDANTS

AECOM ENERGY & CONSTRUCTION, INC.; ALLIED MINERAL PRODUCTS, LLC; APPLIED INDUSTRIAL TECHNOLOGIES, INC.; ATLAS COPCO COMPRESSORS LLC; BORN INC.; BRAND INSULATIONS, INC.; BW/IP, INC.; CH MURPHY/CLARK-ULLMAN, INC.; CHART INDUSTRIES, INC.; CHICAGO BRIDGE & IRON COMPANY; CRANE CO.; CROSBY VALVE, LLC; DCO, LLC; ELLIOTT COMPANY; ERSHIGS, INC.; FISHER CONTROLS INTERNATIONAL, LLC; FLOWSERVE US, INC.; FLOWSERVE US, INC.; FOSTER WHEELER ENERGY CORPORATION; GATES CORPORATION; GENERAL ELECTRIC COMPANY; GENUINE PARTS COMPANY; GOULDS PUMPS, INCORPORATED; GRINNELL, LLC; HARDWARE SALES, INC.; HASKELL CORPORATION; HONEYWELL INTERNATIONAL, INC.; HOWDEN NORTH AMERICA INC.; HUDSON PRODUCTS CORPORATION; INDUCTOTHERM CORP.; ITT INC.; JOHN CRANE, INC.; JOHN ZINK COMPANY, LLC; LAMONS GASKET COMPANY; THE MARLEY-WYLAIN COMPANY, LLC; MCDERMOTT, INC.; MCDERMOTT INTERNATIONAL, LTD.; METALCLAD INSULATION, LLC; METROPOLITAN LIFE INSURANCE COMPANY; MORSE TEC, LLC; NELES-JAMESBURY, INC.; THE NORTH AMERICAN MANUFACTURING COMPANY; P-G INDUSTRIES, INC.; PACIFIC COAST BUILDING PRODUCTS, INC.; PNEUMO ABEX LLC; RHEEM MANUFACTURING COMPANY, INC.; SNELSON COMPANIES, INC.; UNION CARBIDE CORPORATION; VELAN VALVE CORP.; VIACOMCBS INC.; WALTON TOOL & MANUFACTURING CO., INC.; WEIR VALVES & CONTROLS USA, INC.; THE WILLIAM POWELL COMPANY; ZURN INDUSTRIES, LLC.

No. 102782-6

GORDON McCLOUD, J. (concurring in part/dissenting in part)—We took

the unusual step[1] of granting direct, discretionary, interlocutory review to address

the single issue presented by defendant Brand Insulations Inc.'s motion for review:

how to resolve the apparent conflict between two different Court of Appeals

decisions—*Maxwell*[2] and *Welch*[3]—on whether "the Washington Statute of Repose,

RCW 4.16.300-.310[,] . . . bar[s] causes of action against a contractor (Brand) arising

out of it having contributed to the construction of an improvement upon real property

(the ARCO [(Atlantic Richfield Co.)] Cherry Point petroleum refinery) when the

cause of action was initiated decades after expiration of the six-year claim accrual

period imposed by the statute?" Brand's Mot. for Discr. Rev. at 1-2.

---

[1] Appellate courts disfavor interlocutory review. *Maybury v. City of Seattle*, 53 Wn.2d 716, 721, 336 P.2d 878 (1959) ("Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business."); *Hartley v. State*, 103 Wn.2d 768, 773, 698 P.2d 77 (1985) ("Judicial policy generally disfavors interlocutory appeals." (citing *Maybury*, 53 Wn.2d at 721)); *Minehart v. Morning Star Boys Ranch, Inc.*, 156 Wn. App. 457, 462, 232 P.3d 591 (2010).

[2] *Maxwell v. Atl. Richfield Co.*, 15 Wn. App. 2d 569, 476 P.3d 645 (2020).

[3] *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 531 P.3d 265 (2023).

1

That is the only issue addressed by the trial court's order that prompted Brand to seek review. That is the only issue on which Brand sought review. That is the only issue on which we granted review. And that is the only issue that meets our prerequisites to direct, discretionary, interlocutory review. *See* RAP 2.3(b) (discretionary review of an act of the superior court may be accepted only in limited circumstances, including when the superior court has committed obvious error); RAP 4.2(a) (direct review may be sought in the Supreme Court of a superior court decision only in limited circumstances, including when an issue implicates conflicting decisions in the Court of Appeals).

The majority breezes past this history and procedural posture to opine on a claim about the availability of seller liability that was not raised by the motion for review; that does not fit within our prerequisites to direct, interlocutory review; and that was not addressed by the trial court order that we agreed to review.

To be clear, I agree with the majority's conclusion on the question that we agreed to review: based on the record in this case, the Washington construction statute of repose, RCW 4.16.300, bars all claims against Brand "arising from [Brand] having constructed, altered or repaired any improvement upon real property." RCW 4.16.300. But I disagree with the majority's choice to opine on the question that we were not asked, that is, whether plaintiff's seller liability claims nevertheless survive

because they fall outside the category of claims that "aris[e] from [Brand] having constructed, altered or repaired any improvement upon real property."

I therefore respectfully concur in part and dissent in part. I would reverse the trial court's order denying Brand's motion for summary judgment of dismissal of all claims "arising from [Brand] having constructed, altered or repaired any improvement upon real property." RCW 4.16.300. I would remand for further proceedings, including granting Brand's motion for summary judgment on that point. If the plaintiff wants to press his claim that Brand's act of providing insulation is so separate from its construction activity of installing that insulation that it is exempt from the construction statute of repose, he should be free to do so on remand.

BACKGROUND

*A. Overview*

Plaintiff Lee Hetterly contracted mesothelioma following alleged exposure to asbestos at the ARCO Cherry Point refinery from 1971 to 1983. He sued over 50 defendants. This case concerns his claims against one defendant, Brand, which supplied and installed insulation at the refinery during its construction in 1971 to 1972.

Brand moved for summary judgment based on the six-year construction statute of repose. That statute states, in relevant part, "all claims or causes of action of any kind against any person, *arising from* such person having constructed, altered or repaired *any improvement upon real property*," are barred unless they accrue within six years of substantial completion of the construction. RCW 4.16.300-.310 (emphasis added).[4] The parties agree that plaintiff's claims did not accrue within six years of substantial completion of construction—they accrued decades later.

The plaintiff opposed dismissal on the ground that Brand's installation of insulation did not constitute an "improvement upon real property" within the meaning of RCW 4.16.300 and, hence, was not covered by the six-year statute of repose. The plaintiff argued, alternatively, that even if Brand's installation of insulation constituted an improvement to real property, Brand also *supplied* the insulation for installation and thus could be subject to liability for supplying that product even if it could not be liable for injuries arising from the installation itself.[5]

---

[4] The statute was adopted in 1967 and amended in 1984 and 2004. The 1967 version of the statute applies here because that was the operative version when construction of the Cherry Point refinery was completed in 1972. *Cameron v. Atl. Richfield Co.*, 8 Wn. App. 2d 795, 803-10, 442 P.3d 31 (2019).

[5] The plaintiff's complaint alleges liability based on "product liability; . . . strict product liability under Section 402A and 402B of the Restatement of Torts (and RCW 7.72 et seq., as may be applicable to certain product sellers); … and any other applicable theory of liability." Br. of Resp't, App. at 97. I agree with the majority that the Washington

4

The trial court granted summary judgment to Brand and dismissed all of plaintiff's claims against Brand. The trial court relied on *Maxwell*, 15 Wn. App. 2d 568, a Division Two decision based on similar facts (involving a different plaintiff who was allegedly exposed to asbestos installed by Brand during the same time period at the same refinery). *Maxwell* held that Brand's activities at Cherry Point in the early 1970s constituted construction of an improvement to real property and, hence, were shielded from suit by the statute of repose.

Shortly after the trial court in this case dismissed plaintiff's claims, though, Division One decided yet another case involving Brand's activities at Cherry Point during this time frame: *Welch*, 27 Wn. App. 2d 110. *Welch*, however, seemingly came to the opposite conclusion: it reversed a trial court's order granting summary judgment of dismissal to Brand based on the construction statute of repose. Frederick K. Polinder III (Hetterly's executor) moved for reconsideration in light of *Welch*. The trial court granted Polinder's motion to revise the dismissal order based on *Welch*, and then entered a new order denying summary judgment to Brand.

Brand appealed that new order. We granted direct discretionary review to resolve the apparent conflict between *Polinder* and *Welch*, on the one hand, and

---

product liability act, ch. 7.72 RCW, does not apply because the plaintiff's claims arose before July 26, 1981. RCW 4.22.920; majority at 8 n.3. For simplicity, this opinion uses "seller liability" to refer to the plaintiff's product liability claims.

*Maxwell*, on the other, on the proper interpretation of the construction statute of repose. Ord. (Wash. June 5, 2024). Polinder did not seek review of any issues. And the apparent conflict between *Maxwell* and *Welch*, which the *Polinder* trial court was trying to navigate, has nothing to do with Polinder's claim that Brand is alternatively liable as a product seller; no similar claim was before the *Welch* court. Instead, the apparent conflict between *Maxwell* and *Welch* concerns whether Brand "constructed" an "improvement upon real property" by installing insulation at Cherry Point during its construction.

On that issue, I come to the same conclusion as the majority. *Maxwell* held that based on its trial court record, our controlling authority on the interpretation of the construction statute of repose (*Condit*[6]) compelled the conclusion that Brand's activities at Cherry Point in the early 1970s constituted construction of an improvement to real property; those activities were therefore shielded from suit by the statute of repose. *Welch* also relied on *Condit.* But *Welch* concluded that based on its very different trial court record, it could not rule as a matter of law that Brand's activities constituted construction of an improvement to real property.

---

[6] *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 676 P.2d 466 (1984). *See* discussion below at pp. 19-22.

The record in this case is more similar to the record in *Maxwell* than to the record in *Welch*: it contains uncontradicted evidence that Brand's insulation work during the construction of the Cherry Point refinery constituted either construction of the refinery itself or construction of a system integral to the refinery and required for the refinery to function as intended. Following *Condit*, construction of either one constitutes construction of an "improvement upon real property" to which the construction statute of repose applies. The trial court in this case therefore erred in denying summary judgment to Brand on this point.

## B.  Procedural History

A more detailed review of the procedural history of this case is necessary to evaluate whether the trial court order under review addressed plaintiff's seller product liability claim or not.

Brand argued in the trial court that the construction statute of repose bars all of Polinder's claims. As noted, that statute bars "all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property" unless such claims accrue within six years of substantial completion of the construction. RCW 4.16.300-.310.

Polinder argued in the trial court that Brand's installation of insulation did not constitute an improvement to real property at all. Clerk's Papers (CP) at 379-82 (Pl.'s Resp. in Opp. to Brand's Mot. for Summ. J.). He continued that even if Brand's installation of insulation did constitute an improvement to real property, Brand also supplied that insulation and the construction statute of repose does not apply to claims of seller liability. *Id.* at 383-85, 616-21 (Brand's Reply in Supp. of Its Mot. for Summ. J.); 1 Verbatim Tr. of Proc. (VTP) (Mar. 31, 2023) at 9, 20-22, 25-34 (summary judgment hearing).

The trial court granted Brand's motion for summary judgment of dismissal of all claims against Brand on April 4, 2023.[7] It reasoned, relying on *Maxwell*, that the statute of repose barred all of Polinder's claims against Brand. CP at 714 (Ord. Granting Brand's Mot. for Summ. J. (April 2023 order)), 2383 (Ord. Granting Pl.'s Mot. for Relief from Ord. Granting Brand's Mot. for Summ. J., and Den. Summ. J. to Brand (January 2024 order) (stating that the court relied on *Maxwell* the first time it ruled on Brand's summary judgment motion)). That reliance was appropriate: as noted above, in *Maxwell*, Division Two concluded that based on the record in that

---

[7] In doing so, the trial court silently rejected Polinder's argument that Brand remained liable as a product seller, even if the construction statute of repose barred his construction claims.

case, the statute of repose shielded Brand's work at Cherry Point from suit and affirmed summary judgment for Brand. 15 Wn. App. 2d at 586.

But just two months later, Division One of the Court of Appeals seemed to come to a contrary conclusion in *Welch*. Division One concluded that a genuine issue of material fact existed as to whether Brand's installation of insulation at Cherry Point satisfied the statute of repose's "improvement upon real property" requirement. *Welch*, 27 Wn. App. 2d at 125-29.

Polinder moved for relief from the trial court's grant of summary judgment to Brand six days after *Welch* was decided. CP at 718-19 (Pl.'s Mot. for Relief from Ord. Granting Brand's Mot. for Summ. J.). Polinder asked the trial court to reconsider the summary judgment order because *Welch* "held that Brand did not meet its burden to present evidence that its installation of insulation at Cherry Point 'satisfied the [statute of repose].'" *Id.* at 720 (quoting *Welch*, 27 Wn. App. 2d at 126).

Following additional briefing and a hearing, the trial court revised its prior order. It granted Polinder's motion for relief from its previous order and it denied Brand's motion for summary judgment. *Id.* at 2382-86 (January 2024 order). Because this order denied summary judgment to Brand, it reinstated all of Polinder's claims against Brand.

In denying summary judgment to Brand, the trial court in this case echoed the *Welch* court's conclusion: Brand had not sufficiently proved that its insulation contributed to the construction of a structural improvement or to a system that is integrally a normal part of that kind of improvement. The trial court in this case explained the factual disputes critical to this decision. It stated that Brand had asserted that its insulation was integral to the refinery, but evidence showing that the refinery began refining oil before Brand's insulation work was complete suggested that insulation was *not* integral for the refinery to function as intended. *Id.* at 2384. It further explained that Brand offered testimony "regarding the need to regulate heat throughout an operating refinery through use of insulation" but that plaintiff's "other witnesses such as ARCO's engineer Abe Johnson testified that refineries can operate without insulation." *Id.* at 2385. And the trial court observed that "evidence exists of certain units at Cherry Point not being operated, while other units did operate," apparently indicating that not all of the refinery's units were integral to the refinery. *Id.*; *see id.* at 2306 (Pl.'s Resp. to Brand's Suppl. Post-*Welch* Br.). The trial court viewed these factual disputes as genuine issues of material fact precluding summary judgment, and it entered an order denying summary judgment to Brand.

In other words, the trial court's order in this case focuses *exclusively* on the application of the statute of repose. It makes no mention of Polinder's alternative theory that Brand is liable as a product seller.

Brand asked the trial court to certify its order for review pursuant to RAP 2.3(b)(4). *Id.* at 2390-99 (Brand's Mot. for Certification Pursuant to RAP 2.3(b)(4)). The trial court denied that motion. *Id.* at 2422 (Ord. Den. Brand's Mot. for Certification). Brand then sought direct, discretionary, interlocutory review of a single issue in this court, which we granted.

## ANALYSIS

I.   The Majority Errs in Reaching an Issue That the Trial Court's Order Did Not Address, That the Movant Did Not Ask Us To Review, and That Does Not Meet Our Prerequisites to Direct, Discretionary, Interlocutory Review

*A. Brand sought and obtained review of a single issue*

Brand presented a single issue in its motion for discretionary review:

> Does the Washington Statute of Repose, RCW 4.16.300-.310 ("statute of repose") bar causes of action against a contractor (Brand) arising out of it having contributed to the construction of an improvement upon real property (the ARCO Cherry Point petroleum refinery) when the cause of action was initiated decades after expiration of the six-year claim accrual period imposed by the statute?

11

Mot. for Discr. Rev. at 1-2. Polinder did not seek review of any issues. This court granted Brand's motion for discretionary review, so the issue Brand presented is the sole question before this court.

> B. *That issue—the apparent conflict between* Maxwell *and* Welch *on the interpretation of the construction statute of repose—is the only issue that fits within our prerequisites to direct discretionary review*

In fact, that is the only issue that meets our prerequisites to direct discretionary review. Brand sought direct review pursuant to RAP 4.2(a)(3) and discretionary review pursuant to RAP 2.3(b)(1). The seller liability issue falls outside the scope of either provision. RAP 4.2(a) allows parties to seek direct review of a superior court ruling in the Supreme Court "only in the following types of cases," listing six possibilities. RAP 4.2(a)(3) covers "Conflicting Decisions. A case involving an issue in which there is conflict among decisions of the Court of Appeals or an inconsistency in decisions of the Supreme Court." (Italics omitted.) Brand pointed to *Welch* and *Maxwell* as apparently conflicting decisions of the Court of Appeals. Mot. for Discr. Rev. at 21-24, 29. Those decisions do not present a conflict on the seller liability issue; *Welch* does not discuss that issue at all.

RAP 2.3(b)(1) provides that discretionary review may be appropriate where "[t]he superior court has committed an obvious error which would render further proceedings useless." Brand asserted that the trial court committed obvious error by

determining that a fact finder must decide whether the statute of repose applied to Brand's work at Cherry Point. Brand's Mot. for Discr. Rev. at 8-14, 24. This argument has nothing to do with seller liability.

### C. The trial court's order that we agreed to review did not address seller liability

The procedural history of this case, summarized above, confirms that seller liability is not before us. Brand sought review of the trial court's January 2024 order, which the court entered after Polinder asked the trial court to reconsider its earlier order *because of Welch*.[8] *Welch* does not address seller liability at all. Accordingly, the proceedings that followed focused exclusively on application of the statute of repose, which *Welch* called into question.

The trial court entered an interim order that confirms the focus on *Welch*: it stated that the *Welch* decision "arguably impacts application of the statute of repose to the claims against Brand Insulation and the relief granted to Brant [sic] Insulation" and invited the parties to submit briefing and additional evidence "they deem relevant to an examination of the summary judgment ruling in light of *Welch*." CP

---

[8] The sole question presented in Polinder's motion to the trial court was "[s]hould the Court vacate its [Apr. 2023] Order granting Brand's motion for summary judgment where subsequent appellate authority directly on point is inconsistent with the order?" CP at 718 (Pl.'s Mot. for Relief from Ord. Granting Brand's Mot. for Summ. J.).

at 792, 794 (Ord. Re: Consideration Whether to Change the Summ. J. Granted to Brand).

Polinder's post-*Welch* supplemental brief argued that "the court should deny summary judgment because there is a material issue of fact regarding whether the insulation Brand installed . . . constituted an improvement to real property." *Id.* at 2316 (formatting omitted) (Pl.'s Resp. to Brand's Suppl. Post-*Welch* Br.). Polinder made no mention of seller liability in his post-*Welch* briefing. Polinder's counsel did raise the issue at the reconsideration hearing, stating, "[O]ne thing I wanted to throw in there, although I think the Court already—I argued it in the first round and I think the Court found it not persuasive. . . . I argue . . . that in addition to installing that, Brand was a supplier, and I maintain that it acted as a supplier. And that's not . . . [an] activity covered by the statute." 2 VTP (Dec. 22, 2023) at 31 (reconsideration hearing).

The trial court did not, however, mention that issue in its order. Instead, the trial court ruled that *Welch* compelled the conclusion that Polinder identified a genuine issue of material fact as to Brand's affirmative defense, the statute of repose. CP at 2384-85 (January 2024 order).

*D. Given the procedural posture of this case—discretionary review of a single issue in an interlocutory order—we must remand for the trial court to address any remaining issues rather than addressing them for the first time here*

The trial court's order denying summary judgment to Brand was interlocutory in nature (as was its initial order granting summary judgment to Brand).[9] Such an interlocutory order is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CR 54(b).

The trial court exercised its authority to revise its April 2023 order when it granted Polinder's motion for relief from that order and instead denied summary judgment to Brand in January 2024. Our decision in this case reverses that January 2024 order because it was based on an erroneous application of the statute of repose. But our decision does not revive the trial court's earlier interlocutory order granting summary judgment of dismissal of all claims to Brand; that order was effectively vacated when the trial court granted Polinder's motion for "relief" from that order. Instead, our decision now controls the trial court's authority on remand. Like the majority, I would reverse the trial court's order denying Brand's motion for summary

---

[9] CR 54(b) specifies that an order of summary judgment dismissing fewer than all claims or all parties is interlocutory unless the court affirmatively rules that it is final and supports its ruling with findings of fact. The trial court's April 2023 order dismissed all claims against Brand, but it did not resolve all claims against all defendants, it included no findings of fact, and it did not purport to be final. CP at 715.

judgment based on the construction statute of repose and remand for further proceedings, including granting Brand's motion for summary judgment of dismissal of claims barred by the construction statute of repose. But I would allow the trial court to address the seller liability issue for the first time, before we do, if Polinder chooses to raise it there.

II.    The Construction Statute of Repose, RCW 4.16.300-.310, Bars All Actions "Arising from" Construction of "Any Improvement" to Real Property—And Both Our Prior Cases and the Dictionary Interpret Those Words Broadly

I move next to the question properly before this court: whether, based on the record in this case, the construction statute of repose applies to Brand's installation of insulation at Cherry Point.

*A. We review this statutory interpretation issue de novo*

The question presented concerns the interpretation of RCW 4.16.300-.310. This is a matter of statutory interpretation decided on summary judgment. We review summary judgment orders de novo, engaging in the same inquiry as the trial court. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 193 P.3d 886 (2008) (citing *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)). Summary judgment is proper when "'there is no genuine issue as to any material fact.'" *Id.* (quoting *Locke v. City of Seattle*, 162 Wn.2d 474, 483, 172 P.3d 705 (2007)); CR

16

56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue controlling the outcome of the litigation. *Ranger Ins. Co.*, 164 Wn.2d at 552. We also review questions of statutory interpretation de novo, with a "fundamental objective" to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015).

We "discern[] legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 350 (citing *Campbell & Gwinn*, 146 Wn.2d at 9-10).

> *B. The statute's plain language compels us to interpret "arising from" "any improvement" broadly, not narrowly*

The construction statute of repose provides, in relevant part:

> RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, *arising from* such person having *constructed, altered or repaired <u>any</u> improvement upon real property*, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.

17

RCW 4.16.300 (emphasis added). Thus, the question presented is whether Polinder's claims against Brand "aris[e] from" Brand "having constructed, altered or repaired any improvement upon real property."

That quoted language reaches very broadly. "'Arising from' is a phrase with a well established legal meaning." *Parkridge Assocs. v. Ledcor Indus., Inc.*, 113 Wn. App. 592, 603, 54 P.3d 225 (2002). It means "'originating from,'" "'growing out of,'" or "'flowing from.'" *Id.* (internal quotation marks omitted) (quoting *Beckman v. Connolly*, 79 Wn. App. 265, 273, 898 P.2d 357 (1995)). "Arising from" has a far broader reach than other relational words, such as "caused by." *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 774, 198 P.3d 514 (2008).

We have also defined "improvement" in a broad, inclusive way. *Black's Law Dictionary* defines "improvement" as "[a]n addition to property, usu[ally] real estate, whether permanent or not; esp[ecially] one that increases its value or utility or that enhances its appearance." BLACK'S LAW DICTIONARY 904 (12th ed. 2024). Many improvements on real property are structures, like homes and warehouses. But this court and the appellate courts have interpreted the word "improvement" in this

statute broadly to include many other human-made things built on real property, too—from ski lifts and escalators to swimming pools and power lines.[10]

The legislature also used the word "any" to modify "improvement" in this statute. We have interpreted the word "any" to be broadly inclusive. *State v. Westling*, 145 Wn.2d 607, 611, 40 P.3d 669 (2002) (when "any" is used in a statute, it means "every" and "all"); *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991).

Applying those rules, the plain language of the statute, as previously interpreted by this court and the appellate courts, shows that the legislature intended "arising from" and "*any* improvement" to reach broadly in this statute. Applying that broad interpretation, Polinder's claims certainly grow out of Brand's installation of insulation, as part of the initial construction of the refinery, for the purpose of completing the refinery and making it functional. Thus, the broad definitions of the operative words in the construction statute of repose severely undermine Polinder's argument that Brand's activities do not "aris[e] from" "any" "improvement" to real property.

---

[10] *See Morse v. City of Toppenish*, 46 Wn. App. 60, 64, 729 P.2d 638 (1986) (swimming pool); *Highsmith v. J.C. Penney & Co.*, 39 Wn. App. 57, 63, 691 P.2d 976 (1984) (escalator); *Pinneo v. Stevens Pass, Inc.*, 14 Wn. App. 848, 852, 545 P.2d 1207 (1976) (ski lift); *Wash. Nat. Gas Co. v. Tyee Constr. Co.*, 26 Wn. App. 235, 239, 611 P.2d 1378 (1980) (power lines).

> *C. This court's seminal prior decision interpreting the statute,* Condit, *also interprets "arising from" "any improvement" broadly*

Our own precedent interpreting this specific statute compels the same conclusion. Where, as here, this court has previously interpreted a statute, we may also use that precedent as our starting point. *See State v. Roggenkamp*, 153 Wn.2d 614, 629, 106 P.3d 196 (2005) ("'[i]t is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it'" (alteration in original) (quoting *Johnson v. Morris,* 87 Wn.2d 922, 927, 557 P.2d 1299 (1976))).

Our seminal decision interpreting the construction statute of repose is *Condit*, 101 Wn.2d 106. In that case, the court considered whether a freezer tunnel installed at a food processing plant constituted an "improvement to real property" within the scope of the statute of repose. *Id.* at 107-09. Condit was injured while cleaning the plant's freezer tunnel system and sued Lewis Refrigeration, which had designed, manufactured, and installed the freezer tunnel system. *Id.* at 108. Lewis Refrigeration argued that the construction statute of repose barred the claim.

The *Condit* court read the construction statute of repose broadly to protect not just those who contribute to the construction of any improvement but also those who contribute to the construction of any system integral to the improvement and

20

necessary for the improvement to "'function as intended.'" *Id.* at 110-11 (quoting

*Brown v. Jersey Cent. Power & Light Co.*, 163 N.J. Super. 179, 195, 394 A.2d 397

(1978)). In fact, *Condit* explained that the statute applies to all "individuals whose

activities *relate to construction of the improvement*, rather than those who service or

design items within the improvement." *Id.* at 110 (emphasis added).

Applying that broad interpretation, the *Condit* court concluded that the

conveyer belt and refrigeration unit at issue there were not improvements, but

accoutrements to the manufacturing process—and, since they were not

improvements, they were "more properly subject to product liability" law:

> [T]he conveyor belt and refrigeration unit which caused the injury were
> installed by the class of individuals doing a class of activities not named
> in the statute. *Rather than designing an improvement on real property,*
> *respondent was engineering and designing accoutrements to the*
> *manufacturing process taking place within the improvement.* As such,
> they are more properly subject to product liability law and its statute of
> limitation.

*Id.* at 112 (emphasis added).

In sum, *Condit* held that the construction statute of repose applies broadly to

all kinds of activities that "relate to" the construction of an improvement, even

activities that contribute to the construction of systems integral to the improvement

and necessary for the improvement to "function as intended." *Id.* at 110-11. *Condit*

simply concluded that the conveyer belt and refrigeration unit in the freezer tunnel

system at the food processing plant in that case did not meet that broad definition.

They were just accoutrements—accessories—installed to help the manufacturing

process taking place "within the improvement." *Id.* at 112.

>    D. *In the 40 years since* Condit*, the legislature has not displaced its broad
>    interpretation of the statute of repose*

*Condit* was decided in 1984. The legislature has amended the statute twice

since then, but it has not displaced *Condit*'s interpretation of the statute. "'[W]here

statutory language remains unchanged after a court decision the court will not

overrule clear precedent interpreting the same statutory language.'"[11]

III.  *Maxwell* and *Welch* Adhere to This Broad Reading of the Construction Statute
      of Repose; They Reach Opposite Conclusions Based on Differences in Their
      Factual Records, Not Differences in Their Legal Analysis

>    A. Maxwell *adheres to* Condit*, properly recognizes the broad meaning of
>    "arising from" and "any improvement," and properly rejects plaintiff's
>    arguments about narrowing the reach of that statutory language*

*Maxwell* focused on the first way to satisfy the statute under *Condit* (whether

Brand constructed an improvement on real property) because Brand "did not submit

---

[11] *Antio, LLC v. Dep't of Revenue*, 3 Wn.3d 882, 889-90, 557 P.3d 672 (2024) (alteration in original) (quoting *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017)). The legislature's failure to amend a statute following a judicial decision interpreting that statute indicates legislative acquiescence in that decision. *Id.* at 891 (quoting *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)).

any specific evidence" that would satisfy the second way (whether the insulation Brand installed was an integral part of the refinery necessary for it to operate as intended).[12] *Maxwell*, 15 Wn. App. 2d at 586 n.5.

The *Maxwell* court restated the test in *Condit* and its distinction between persons who construct an improvement and persons who merely install systems located in the improvement. *Id.* at 585. Noting that "[t]here is no indication that . . . Brand manufactured or installed some independent system that was merely housed within the refinery structure," the court held that Brand was entitled to summary judgment because it was an "'individual[] whose activities relate[d] to construction of the improvement.'" *Id.* (fourth alteration in original) (quoting *Condit*, 101 Wn.2d at 110).

*Maxwell* did state that "[t]he question is whether Brand's installation of . . . insulation . . . *involved* the construction of an improvement upon real property." *Id.* at 584 (emphasis added). *Welch* criticizes *Maxwell*'s use of "involved" because it improperly "reframed" the inquiry from *Condit*. *Welch*, 27 Wn. App. 2d at 121-24. *Welch* is correct that *Maxwell*'s language strays a tiny bit from *Condit* by asking whether the activity at issue "involves the construction" of an improvement. But the

---

[12] In this case, by contrast, Brand *has* submitted evidence to show that the insulation it installed was integral to the refinery.

language in *Condit* is not that much different: *Condit* held that the construction statute of repose protects "individuals whose activities *relate to construction of the improvement*, rather than those who service or design items within the improvement." 101 Wn.2d at 110 (emphasis added). There's not that much difference between activities relating to construction of the improvement and activities involving construction of the improvement. Both are fair interpretations of the statute's broad "arising from" language. So this criticism seems overblown.

And that language difference did not affect the outcome under the facts of *Maxwell*: as the insulation subcontractor, Brand's activities both "involved" and also "related to" construction and, as the majority states, even constituted Brand having "constructed" an improvement. *See* majority at 14-15.

The *Maxwell* court then assesses the plaintiff's argument that Brand was not protected by the statute of repose because it insulated piping and machinery within the refinery, but it did not build the refinery itself. 15 Wn. App. 2d at 584-85. This argument is based on *Condit*'s distinction between those who construct an improvement and those who merely install systems located in the improvement. *Maxwell* applied the *Condit* analysis to explain why Brand's work could not have

24

been within the refinery structure—because there was no refinery until Parsons[13] and

Brand built it:

> Here, unlike the defendant[] in *Condit* . . . , Parsons actually constructed the improvement upon real property—the Cherry Point Refinery. Parsons subcontracted with Brand to perform a portion of that construction—the installation of insulation in certain parts of the refinery. There is no indication that either Parsons or Brand manufactured or installed some independent system that was merely housed within the refinery structure.

*Id.* at 585. *Maxwell* thus holds that Brand's participation in the refinery's initial

construction tends to show that Brand "constructed the improvement upon real

property," not that it "installed some independent system that was merely housed

within the refinery structure." *Id. Maxwell* did not hold that "whether the activities

are part of a wholly new construction or an existing system is determinative," as

*Welch* claims. *Welch*, 27 Wn. App. 2d at 124.

*Welch* also asserts that *Maxwell* departed from *Condit*'s test because *Maxwell*

reached its conclusion "without analyzing whether [Brand] contributed to a

structural improvement to real estate or to an integral system." *Id.* at 121; *see also*

*id.* ("Division Two did not . . . analyze whether Brand constructed a structural aspect

of the Cherry Point refinery."). The *Welch* court frames *Condit*'s test as whether

---

[13] Parsons was the general contractor and Brand was the primary subcontractor for insulation. Both were parties in *Maxwell*.

Brand "contributed to the construction of either (1) a *structural* improvement in the refinery or (2) a system that is integrally a normal part of a refinery and required for the refinery to function as intended." *Id.* at 112 (citing *Condit*, 101 Wn.2d 106) (emphasis added).

But neither the statute nor *Condit* require that an improvement be "structural" or a "structure" to be covered by the statute of repose. Those words are absent from the statute, which uses the words "any improvement." *Condit* used "structural" because it was a good way, under the facts of that case, to figure out if the defendant's work constituted an improvement to real property or not.

In sum, I agree with the majority that *Welch* erred in concluding that *Maxwell* departed from *Condit*. *See* majority at 14.

> B. Welch *also adheres to* Condit*; it denied summary judgment to Brand because the evidence in that case raised a question of fact about the nature of Brand's work*

Instead, *Welch* denied summary judgment to Brand because the record in that case contained conflicting evidence about the nature of Brand's work.

*Welch* also relied on *Condit*. *Welch* held that Brand failed to establish that installing insulation at the refinery contributed to the construction of an improvement to real property under either of *Condit*'s prongs. *Welch*, 27 Wn. App.

26

2d at 127 (quoting *Condit*, 101 Wn.2d at 110-11 (quoting *Brown*, 163 N.J. Super. at 195)). The court explained that Brand failed to provide any evidence "to establish the intended function of a petroleum refinery, what a petroleum refinery normally consists of in terms of structures and systems, or that the various refinery components it insulated or the insulation itself constituted a system that was integrally a normal part of a petroleum refinery and necessary for it to function as intended." *Id.*

But the *Welch* court suggested that if such evidence had been present, then Brand would likely have been entitled to summary judgment of dismissal. It quoted *Stanley v. Ameren Illinois Co.*, 982 F. Supp. 2d 844, 862-63 (N.D. Ill. 2013), which held as a matter of law that asbestos-containing insulation at a power plant constituted an improvement on real property, based on the evidence that was before that court: that insulation makes it possible for workers to be present at a power plant by controlling extreme heat, that not insulating would be "'extremely inefficient from both an economic standpoint and from an energy-production standpoint,'" and that the plaintiff failed to refute evidence that insulation is an integral component of a power plant. *Welch*, 27 Wn. App. 2d at 128 n.12. *Welch* distinguished *Stanley* on the ground that "[t]hese types of predicate facts are absent here." *Id.*

But those facts are present in the case, as discussed below.

IV.    Applying the Correct Analysis, the Trial Court Erred in Denying Summary
       Judgment to Brand on the Construction Liability Claims

   A. *There is no material question of fact about whether Brand's insulation
      work contributed to the construction of an improvement to real property;
      it did*

I agree with the majority that Brand's installation of insulation contributed to

Cherry Point's construction. *See* majority at 14-15. Polinder's argument that

insulation was a mere accoutrement to the manufacturing process is unpersuasive.[14]

   B. *There is no material question of fact about whether insulation is integrally
      a normal part of a refinery, required for the refinery to function as
      intended; it is*

The trial court in this case found a dispute of material fact because Brand and

Polinder submitted purportedly conflicting evidence on whether insulation is

integral to a refinery. Specifically, the trial court cited ARCO engineer Abe Johnson's

testimony that "refineries can operate without insulation," that Cherry Point began

refining oil in 1971 even though Brand's work continued into 1972, and that some

---

[14] Brand presented undisputed evidence that its installation of thermal insulation on
the refinery's columns, heat exchangers, vessel, reformers, tanks, and piping contributed
to the construction of the refinery. For example, in a written report from general contractor
Parsons to ARCO, Parsons reports its progress on each of the "major construction
activities" at the refinery. CP at 568. One of the seven major areas listed is insulation. *Id.*
The progress report also describes "Delaying Factors": "The shortages of manpower in the
*critical* crafts encompassing piping, instrument, electrical, and *insulation* are affecting
completion of the remaining refinery units." *Id.* at 581 (emphasis added). This evidence
establishes that Brand contributed to the construction of an improvement, not an
accoutrement.

refinery units operated while others did not. CP at 2382-86 (January 2024 order). I agree with the majority that this does not present a material question of fact because Polinder's evidence, when read in context, does not contradict Brand's evidence. *See* majority at 15. But I offer a slightly more detailed explanation.

Brand provided testimony from expert witness Melvin M. Sinquefield. Sinquefield is a licensed professional engineer with 40 years of experience as a chemical process engineer across the petrochemical, refining, and oil and gas production industries. CP at 1211 (Decl. of Melvin M. Sinquefield). He describes the process units that compose a refinery and the components that make up those units. *Id.* at 1212-13. He then states that "[m]ost of the essential component items in a process system have a common integral requirement—insulation," because "[a]ll the refinery process units and their respective component items . . . require management of the heat energy and temperature control based on the first law of thermodynamics," i.e., that energy cannot be created or destroyed and thus must be tracked and balanced across the refinery system. *Id.* at 1213, 1212.

Polinder provided testimony from Abe Johnson, a senior project engineer for ARCO at the Cherry Point refinery construction project, to argue that a genuine issue of material fact exists as to whether insulation is integral to a refinery. Polinder's

supplemental post-*Welch* response brief included this excerpt of Johnson's testimony:

> Insulation was relatively unimportant, because it's a heat concentration. It is a matter of saving energy in most cases. Heat tracing, which was what was used to protect pipes from freezing or to protect things from solidifying, was of more importance than insulation. And insulation covered over the heat tracing where it was used. Okay? But most refineries can operate without insulation.

*Id.* at 2308 (Pl.'s Resp. to Brand's Suppl. Post-*Welch* Br.), 2005 (Johnson's deposition in *Rosentreter v. Atl. Richfield Co.*, No. 04-2-23931-1 (King County Super. Ct. Mar. 2005)).

But there was more, and the plaintiff's brief omitted it. Brand filed additional portions of Johnson's depositions in its reply; they clarified that Johnson did not mean that refineries don't need insulation to operate as intended in the real world. *Id.* at 2328-30 (Dismissed Brand's Reply in Supp. of Suppl. Post-*Welch* Br.), 2348-66 (Johnson's deposition in *Broy v. Atl. Richfield Co.*, No. 15-2-06590-0 (Pierce County Super. Ct. Nov. 2016)). Instead, those additional portions of Johnson's testimony show that he meant "it would theoretically be possible that you could design [a refinery] without insulation. You wouldn't do it, but it is theoretically possible." *Id.* at 2342 (Johnson's deposition in *Broy*). Johnson further acknowledged in response to questioning by opposing counsel that it is standard practice to insulate

pipes and vessels at oil refineries, that insulation is a basic and integral component of any completed refinery, that insulation is "important to the economic operation from a personnel safety point of view" because "it is important to protect . . . people so they don't get burned," and that he is not aware of any oil refineries not using insulation. *Id.* at 2342-43 (Johnson's deposition in *Broy*). Reading Johnson's testimony in context, he explained that insulation was unimportant *relative to heat tracing* (another method of regulating the temperature of pipes). *Id.* at 2005 (Johnson's deposition in *Rosentreter*).

Hence, the testimony Polinder quotes does not create a material question of fact. Johnson's opinion that "most refineries can operate without insulation" was purely theoretical, not meant to apply to any refinery in the real world, as shown by his own subsequent testimony, by Brand's expert, and by the voluminous record showing the design plans and specifications for the Cherry Point refinery, which indicate that temperature control (and thus insulation) was critical to the design.

The other basis for the trial court's conclusion—that Cherry Point began refining oil in 1971 even though Brand's work continued into 1972, and that some refinery units operated while others did not—does not create an issue of material fact, either. I agree with the majority's analysis on these points. *See* majority at 15.

Brand constructed an improvement on real property under both prongs of *Condit*'s test. The trial court erred in coming to the opposite conclusion.

CONCLUSION

I agree with the majority that the construction statute of repose bars Polinder's claims arising from Brand's installation of insulation at the Cherry Point refinery. Because that was the sole issue before this court, I would reverse the trial court's denial of summary judgment to Brand and remand with instructions to enter summary judgment in favor of Brand on claims covered by the statute of repose and to conduct any other necessary proceedings.

The majority nevertheless addresses a seller liability issue that was not addressed by the trial court, that was not raised by the party seeking direct discretionary review of the trial court order, and that does not fall within our rules for the sorts of issues that merit our direct, discretionary, interlocutory review. I disagree with its decision to reach that issue in the first instance on this motion for direct discretionary review of a different ruling.

I therefore respectfully concur in part and dissent in part.

Gordon McCloud, J.

Johnson, J.

Madsen, J.P.T.