IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOSHUA BROTHERS, as Litigation Guardian ad Litem for XINNAN NANCY ZHONG; YUZHEN WANG, individually, | No. 87897-2-I |
| Appellants, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| ORM BELLEVUE LLC; LP SMFP HOLDINGS, LLC d/b/a ORM FERTILITY; AMANDA HURLIMAN, MD.; and J. DOES, | |
| Defendants, | |
| and | |
| MATRIX ANESTHESIA PS.; and RANDALL BAKER, MD., | |
| Respondents. | |

DíAZ, J. — Xinnan Nancy Zhong suffered brain damage during an egg-retrieval procedure in 2022, which rendered her permanently and severely disabled. Serious complications arose after doctors administered an antibiotic which cross-reacted to her penicillin allergy. Her mother and legal representatives subsequently sued, inter alia, her anesthesiologist and the physician's group which

employed him. She now argues that the court erred when it dismissed two of her claims on summary judgment. She also asserts that a Washington statute which permits evidence of collateral-source compensation in health care actions is unconstitutional. We reverse and remand because, although Zhong does not show that RCW 7.70.080 is unconstitutional, we agree that the court erred by dismissing her claims at this stage of the judicial process.

I.    BACKGROUND

In November 2022, as a healthy 33-year-old, Zhong underwent an egg-retrieval procedure to preserve her eggs until she was ready to have children. Before conducting the operation, her obstetrician directed her anesthesiologist to give her cefazolin, which is an optional prophylactic antibiotic. Dr. Randall Baker dispensed it after he sedated her, and she was not part of their decision to administer it.

The antibiotic reacted adversely with the penicillin allergy she had disclosed, but her doctors did not realize its negative effects until she did not wake up from the surgery. Unable to resuscitate her, they intubated her and then paramedics transferred her to an emergency department. Ultimately, Zhong sustained brain damage and is now in a permanently impaired, minimally conscious state requiring full-time care.

Her court-appointed guardian ad litem, Joshua Brothers, and Zhong's mother, Yuzhen Wang (together, "Zhong"), filed a lawsuit asserting several causes of action against multiple parties. As relevant here, the respondents are Dr. Baker, the anesthesiologist who administered the antibiotic, and Matrix Anesthesia PS,

2

the physician group which employed him.[1]  Matrix is a corporation employing anesthesiologists to provide anesthesia services to hospitals and surgery centers.

More specifically, according to Matrix's CEO, Andrew Turella, the corporate physician group employs roughly 90 anesthesiologists who provide services at about a dozen sites.  The anesthesiologists are expected to know and to comply with the policies and procedures of the hospitals or centers they are sent to.  But Matrix does not provide training before they go to a new site.  Nor does it require anesthesiologists to participate in any particular emergency exercises.  Nonetheless, Turella explained that anesthesiologists are expected to consider whether to give patients medications before a procedure, based on their records and medical history.  They are also expected to ask follow-up questions about any disclosed allergies in order to provide appropriate and prudent medical care.  Together with surgeons, Matrix's employees help a patient decide whether to administer antibiotics after discussing their risks and benefits.  In other words, Matrix's anesthesiologists are at least somewhat involved in the decision whether or not to give optional antibiotics.

In addition, under the contract between Matrix and ORM, Matrix remained responsible for its own acts and omissions and was subject to all applicable legal requirements and professional standards.  The contract stated Matrix was retained to provide credentialed physicians who would render same-day anesthesia services for surgeries as well as patient monitoring and assessment.  And it

---

[1] Zhong also sued her obstetrician and the clinic where the procedure took place, but they are not parties to this appeal as they settled Zhong's claims against them prior to this appeal.

specified, Matrix "will remain responsible to address anesthesia related complications[.]"

Zhong timely appeals.

## II.    ANALYSIS

A.    Summary Judgment Dismissal of Zhong's Negligence Claim against Matrix

Zhong first challenges the court's decision to dismiss her claim of negligence against Matrix.  We agree.

Washington's medical malpractice statute, chapter 7.70 RCW, governs "all civil actions and causes of action . . . for damages for injury occurring as a result of health care[.]"  RCW 7.70.010.  Our Supreme Court has explained that, "[i]n enacting chapter 7.70 RCW, the legislature modified both the substantive and the procedural elements of the common law negligence cause of action in the health care context."  Webb v. Neuroeducation Inc., P.C., 121 Wn. App. 336, 347, 88 P.3d 417 (2004).

Specifically, RCW 7.70.030 sets out three causes of action against a "health care provider."  The first is for claims alleging that "injury resulted from the failure of a health care provider to follow the accepted standard of care[.]"  RCW 7.70.030(1).  The applicable standard of care for such actions generally must be established by expert testimony.  Grove v. PeaceHealth St. Joseph Hosp., 182 Wn.2d 136, 144, 341 P.3d 261 (2014).

As to whom may be subjected to such a suit, the statute defines "health care provider" in a three-part, disjunctive provision.  RCW 7.70.020.  In the first part (1), the statute specifies that such suits may be brought against a "person

4

licensed by this state to provide health care or related services[.]" RCW 7.70.020(1). In the third part (3), the statute further provides that such a suit may be brought against "[a]n entity, whether or not incorporated, facility, or institution employing one or more persons described in part (1) above, including, but not limited to, a hospital, clinic, health maintenance organization, or nursing home. . . [.]" RCW 7.70.020(3). Taken together, our Supreme Court has succinctly held that the subject of such a lawsuit includes, not only individual providers, but "any 'entity' employing such persons[.]" Grove, 182 Wn.2d at 144 (citing RCW 7.70.040 (1)).

There is no dispute that Matrix employs physicians and, thus, is subject to suit under the plain language of RCW 7.70.020(3). Respondents acknowledged this fact at oral argument, agreeing that Matrix "fits under the technical definition of a health care provider." See Wash. Ct. of Appeals oral arg., Joshua Brothers v. ORM Bellevue, LLC, No. 87897-2-I (Apr. 17, 2026), at 12 min., 15 sec. through 12 min., 19 sec. video recording by TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2026041160. Accordingly, on summary judgment, the next question is whether there is a genuine issue of material fact whether Matrix failed to follow "the accepted standard of care" as required to establish liability under RCW 7.70.030(1).

Importantly, Zhong's negligence claim asserts that Matrix itself had independent obligations as a health care provider distinct from her anesthesiologist's actions in administering the antibiotic. In opposing Matrix's motion for summary judgment, Zhong specified that this claim was based on the

physician group's allegedly negligent *inaction*. Namely, she alleged Matrix was liable because it failed to adopt and implement policies to ensure that its employees took proper steps to identify and, where present, eliminate or mitigate against risks of harm to patients before starting medical procedures. She also alleged it failed to ensure its employees were prepared to respond to adverse reactions once procedures began.[2]

So conceived, Zhong's negligence claim against Matrix should have survived summary judgment because there were genuine issues of material fact regarding the existence, and Matrix's possible breach, of its duty. Summary judgment is only appropriate if "there are no genuine issues of material fact and . . . reasonable minds could reach but one conclusion." Crisostomo Vargas v. Inland Wash., LLC, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment disposition is improper, by contrast, if genuine issues of material fact remain—such as those regarding whether a party accused of negligence is liable for breaching "'one's own duty of care,'" including a statutory duty. See id. at 730-31 (quoting 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 4:1, at 178-79 (4th ed. 2013)).

Here, Zhong's expert, Dr. Paul Hofman, offered testimony as a health care executive, who assists inter alia health systems in the provision of patient care. Dr. Hofman claims to have expertise in the fields of healthcare management and

---

[2] In turn, it is a strawman to claim that Zhong seeks to expand the corporate negligence doctrine or have a jury find Matrix "directly" liable for the failure to secure informed consent to the antibiotic, as Matrix claims. Those are not the claims before us.

administration, patient safety, and related issues. He provided a declaration asserting that Matrix had a duty, which it did not satisfy, to adopt and enforce policies requiring its physicians to perform risk analyses and engage in procedures to mitigate and address possible patient harm. Dr. Hofman further declared that, in his review of the record, he could find no policies or protocols kept by Matrix which addressed these requirements. Dr. Hofman concludes that these failures are "clear derogation of [Matrix's] responsibility and a violation of the administrative standard of care required for these organizations."

In response, Matrix argues that Dr. Hofman "failed to articulate any *viable* duty that Matrix supposedly breached" and that his declaration was "*questionable*" because he may have given inconsistent testimony during a deposition. (Emphasis added.) These questions go to the weight a jury should give to Dr. Hofman's testimony, which is for the jury to determine. At this stage of the litigation, Dr. Hofman adequately has set forth a "standard of care required of professional practitioners . . . who practice in the same field. The duty of physicians must be set forth by a physician, the duty of structural engineers by a structural engineer and that of any expert must be proven by one practicing in the same field—by one's peer." McKee v. Am. Home Products, Corp., 113 Wn.2d 701, 706-07, 782 P.2d 1045 (1989) (citing Young v. Key Pharms., Inc., 112 Wn.2d 216, 770 P.2d 182 (1989)).

In other words, it is unavailing on summary judgment to assert, as Matrix does here, that the plaintiff's expert witness has not conclusively established the accepted standard of care. The resolution of this issue will determine whether or

not Matrix is liable for failing to meet the "accepted" standard of care as a health care provider and, as such, is liable under the malpractice statute.

Our Supreme Court recently reiterated this process in Beard v. The Everett Clinic, PLLC, 6 Wn.3d 201, 585 P.3d 719, 724 (2026). There, the Court held that "[p]arties generally elicit testimony from expert witnesses within the defendant's same health care field and specialty to establish the applicable standard of care." Id. at 208. The Court further acknowledged that "[o]ften health care providers within the same discipline will disagree regarding the exact boundaries" of the applicable standard of care. Id. And the Court held that, "[u]ltimately, the jury must consider all the evidence and determine" whether a defendant's actions fell within the disputed standard. Id.; see also id. at 220 (holding "that the expert witnesses' testimonies are necessary, though inconclusive, for the jury to determine the boundaries of the standard of care.").

Matrix otherwise again misstates the nature of Zhong's claims, claiming that she sought to hold Matrix liable for Dr. Baker's failure "to engage in specific screening or risk discussions for certain pre-anesthesia risks during their informed consent process." That is another strawman and not the case at bar.

Finally, the court based its decision to dismiss the negligence claim on LaPlant v. Snohomish County, 162 Wn. App. 476, 271 P.3d 254 (2011), upon which Matrix also significantly relies. There, we held that a vicarious liability claim against an employer for the negligent actions of its employees was duplicative or redundant where the plaintiff also raised a negligent training and supervision cause of action for their same underlying conduct, when committed within their scope of

employment.

But the opinion did not address an injury resulting from medical care, let alone serve to limit the claims a plaintiff may raise under chapter 7.70 RCW against distinctly defined providers alleged to have violated "its own duty." Crisostomo Vargas, 194 Wn.2d at 730-31. In short, LaPlant has no bearing on the viability of Zhong's negligence claim against Matrix as an "entity" under Washington's malpractice statute, which expressly modifies common law causes of action in the health care context. RCW 7.70.010; Webb, 121 Wn. App. at 347.

Thus, we remand Zhong's claim, which was properly raised pursuant to RCW 7.70.020(3) and RCW 7.70.030(1), for further proceedings.

B.     Summary Judgment Dismissal of Zhong's Battery Claim against Dr. Baker

Next, Zhong challenges the court's decision to dismiss her claim of common law battery against Dr. Baker.[3] We agree that it was error to dismiss this claim on summary judgment.

Separate from and in addition to a statutory claim for failure to obtain informed consent (see RCW 7.70.030(3)), a common law cause of action for battery protects an individual's right to consent as a matter of privacy and bodily integrity. Bundrick v. Stewart, 128 Wn. App. 11, 17, 114 P.3d 1204 (2005). As Bundrick notes, "nothing in the statute indicates the legislature intended to eliminate the common law claim." Id.

---

[3] After Zhong moved the court for summary judgment on a common law battery claim against Dr. Baker, Matrix joined Dr. Baker in a cross-motion for summary judgment dismissal. The court again ruled in respondents' favor, and it likewise denied Zhong's revision motion.

Such a claim requires proof of several elements, including intentional and nonconsensual bodily contact. Reagan v. Newton, 7 Wn. App. 2d 781, 800, 436 P.3d 411 (2019). But a plaintiff need not prove such a touching was done with intent to cause injurious harm. Id. at 801. Rather, a plaintiff need only offer evidence that the intentional touching was done "with the intention of bringing about [either] a harmful *or offensive* contact." Garratt v. Dailey, 46 Wn.2d 197, 200-01, 279 P.2d 1091 (1955) (emphasis added) (quoting RESTATEMENT (FIRST) OF TORTS § 29 (Am. L. Inst. 1937)). An "offensive contact" can be shown with evidence "'the defendant's touching was not apparently consented to.'" Bundrick, 128 Wn. App. at 18 (quoting DAN B. DOBBS, THE LAW OF TORTS § 29, at 57 (2000)). Indeed, we have specifically recognized that a plaintiff alleges common law battery with facts showing an operating surgeon intended to touch them with a medical instrument without their consent. See id. 18-19 n.5.

Here, there is no dispute that Dr. Baker acted with the intention of bringing about contact with Zhong's body when he injected her with the antibiotic nor is there any dispute that this touching ultimately caused her severe, adverse consequences. The dispositive issue, therefore, is whether Dr. Baker intentionally contacted Zhong *without her consent*. If so, the touching was offensive as well as harmful (although it need not be both) and, therefore, battery as claimed. We conclude there is a genuine issue of material fact regarding Zhong's consent, so summary judgment was improper.[4]

---

[4] We note that in ruling otherwise, the court may have misstated the applicable summary judgment standard when it stated: "I do find that the defendants have *provided in more than one way that there is evidence* that Ms. Zhong consented."

Specifically, the record establishes that Zhong consented to the overall surgery because she signed a form agreeing to the procedure. Her signature also shows she agreed to certain additional measures. Specifically, the consent form states: "I understand that during the procedure problems may arise. These problems may require a procedure different from that listed above. If another procedure is needed, I authorize my Doctor to do whatever procedure is considered to be in my best interest." As the plain language of the consent form states, it applies if a problem arises *during* the egg-retrieval procedure and "another procedure is needed." (Emphasis added.) The facts in the record before us to not support that a problem arose during the procedure or that the antibiotic was a "another procedure." At a mimimum, reasonable minds could disagree over whether Zhong consented to a purely elective, pre-surgery antibiotic, i.e., one prior to any problem arising during the egg-retrieval procedure.

Moreover, there are at least several additional pieces of evidence in the record which create a genuine issue of fact as to whether Dr. Baker injected her with the antibiotic without her consent. Namely, Zhong's surgeon stated in a deposition that the choice to give her cefazolin was made when she was already unconscious. And there is evidence suggesting she was never told about the possibility a prophylactic antibiotic might be administered, let alone that it could

---

(Emphasis added.) That finding did not answer the determinative question: whether respondents were entitled to summary judgment because the record reflected the *absence* of any genuine factual issue as to Zhong's consent for purposes of her battery claim. See Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022). To the extent the court weighed the evidence or resolved factual issues in Matrix's favor, it erred. Id. at 217.

react adversely with her disclosed allergy. Although another form produced in discovery mentions the use of antibiotics, that form does not include her signature.

In response, Matrix and Dr. Baker aver there is no question Zhong consented to the antibiotic because they claim her consent to the surgery encompassed consent to its "component parts," such as "necessary medications." But there is a genuine issue of fact as to whether or not the injection was "necessary," as they claim. Matrix's CEO provided deposition testimony that prophylactic antibiotics are only administered in egg retrieval procedures "probably half the time." Thus, reasonable minds could disagree over whether the antibiotic was a required, inherent part of the surgery Zhong agreed to.

In summary, because there are several genuine issues of material fact as to whether Zhong consented to be injected with a prophylactic antibiotic at the start of the egg-retrieval procedure, the court erred by dismissing her battery claim against Dr. Baker on summary judgment.

C.    Constitutionality of RCW 7.70.080

Finally, Zhong asserts that RCW 7.70.080 is unconstitutional. RCW 7.70.080 in summary states that, with some limitations, "[a]ny party [typically, the defendant health care provider] may present evidence to the trier of fact that the plaintiff has already been compensated for the injury complained of" and that the plaintiff, in response, may present evidence of financial obligations it owes as well.

We review constitutional challenges to a statute de novo. In re Det. of P.P., 6 Wn. App. 2d 560, 567, 431 P.3d 550 (2018). It is well established that statutes are presumed constitutional and that a challenger carries a heavy burden to show

a statute is unconstitutional beyond a reasonable doubt. Sch. Districts' All. for Adequate Funding of Special Educ. v. State, 170 Wn.2d 599, 605, 244 P.3d 1 (2010). Under that standard, we will not strike a duly enacted statute unless we are fully convinced, after a searching legal analysis, that the statute violates the constitution. Id. at 606 (footnote omitted). Relatedly, our Supreme Court has explained that wherever possible, it has a duty to construe a statute to uphold its constitutionality. See Associated Gen. Contractors of Wash. v. State, 200 Wn.2d 396, 404, 518 P.3d 639 (2022).

Zhong advances two main arguments that RCW 7.70.080 is unconstitutional. We conclude neither is convincing.

First, she asserts the statute constitutes a "quintessential" due process violation because it does not afford sufficient guidance to juries. However, she cites no case for the contention that a statute violates due process if it confers juries with enough discretion to calculate damages such that they could possibly subject similar plaintiffs to dissimilar results. See id.; DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Otherwise, she cites wholly distinguishable precedent which deems statutes unconstitutional if they define criminal offenses so vaguely that they do not adequately protect against arbitrary and discriminatory enforcement. See State v. Wissing, 66 Wn. App. 745, 749, 833 P.2d 424 (1992). This is unavailing.

Second, Zhong asserts that RCW 7.70.080's modification of the traditional

collateral source rule confers an unconstitutional special privilege on health care providers.

Article I, section 12 of Washington's constitution states: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."  When we review challenges based on article I, section 12, we employ a two-part inquiry, but we only proceed to the latter step if the first prerequisite is met.  Bennett v. United States, 2 Wn.3d 430, 443, 539 P.3d 361 (2023).  "First, we ask whether a challenged law grants a 'privilege' or 'immunity' for purposes of our state constitution. If the answer is yes, then we ask whether there is a 'reasonable ground' for granting that privilege or immunity."  Id. (internal quotation marks omitted) (quoting Schroeder v. Weighall, 179 Wn.2d 566, 572, 316 P.3d 482 (2014))

Here, Zhong's claim fails at the first step because she cites distinguishable precedent, namely, other statutes which implicated a fundamental right not present here.  For example, she cites to statutes shortening the time frames in which plaintiffs could bring claims, something she concedes RCW 7.70.080 does not do.  In short, there is no showing that this statute implicates a fundamental right of state citizenship, such as the right to pursue a cause of action.  See Bennett, 2 Wn.3d at 443-44.  And without such a showing, we need not proceed further to an assessment of reasonable grounds.  Id.[5]

---

[5] In a footnote, Zhong also "adopt[s]" the argument raised in Haskins v. Multicare Health Sys., 186 Wn. App. 11, 16-20, 347 P.3d 460 (2014), which claimed RCW 7.70.080 violates the constitutional separation of powers.  But, as she also

In short, Zhong has not carried her considerable burden to establish the statute is unconstitutional beyond a reasonable doubt.

### III.  CONCLUSION

We affirm the trial court's denial of Zhong's constitutional challenge to RCW 7.70.080.  But we reverse its summary judgment dismissal of her negligence claim against Matrix and her battery claim against Dr. Baker, and we remand the matter for further proceedings consistent with this opinion.

Díaz, J.

WE CONCUR:

Feldman, J.

Birk, J.

---

concedes, the Haskins decision rejected that argument and our Supreme Court has not addressed it.  We choose not to reach this issue on this briefing.